*864
 
 OPINION
 

 By the Court,
 

 Hardesty, J.:
 

 The constructional defect action underlying this original writ proceeding, in which we clarify the scope of NRS Chapter 40, concerns approximately 1,200 residences in the Sun City Summerlin community in Las Vegas, Nevada. Petitioners moved the district court for partial summary judgment with respect to approximately 700 of those residences, arguing that they did not constitute “new residences” for constructional defect purposes under NRS 40.615, which limits NRS Chapter 40 “constructional defect” remedies to “new residence^].”
 
 [1]
 

 In asserting that certain residences at issue in this case did not constitute “new residence[s]” under NRS 40.615, petitioners primarily relied on our decision in
 
 Westpark Owners’ Ass’n
 
 v.
 
 District Court,
 
 in which we defined “new residence” for constructional defect purposes as “a product of original construction that has been unoccupied as a dwelling from the completion of its construction until the point of sale.”
 
 [2]
 
 According to petitioners, because approximately 700 of the residences at issue below were occupied as dwellings before the residences’ subsequent owners obtained title to the homes, the residences did not constitute “new” residences within the scope of NRS 40.615 and therefore were not subject to constructional defect actions under NRS Chapter 40. Petitioners thus contended that they were entitled to summary judgment as to their NRS Chapter 40 liability on claims related to those residences. The district court ultimately denied the summary judgment motion, noting that it was unconvinced that subsequent purchasers of recently constructed homes were precluded from the remedies that NRS Chapter 40 provides, and this original petition for a writ of mandamus followed.
 

 In this original proceeding, then, we clarify whether our definition of “new residence” in
 
 Westpark
 
 precludes a homeowner who is not the home’s first purchaser from seeking the remedies available under NRS Chapter 40 for constructional defects in the home. It does not. To conclude otherwise undermines NRS Chapter 40’s
 
 *865
 
 purposes to provide an expansive remedy for homeowners and protection for developers and leads to disparate treatment among otherwise similarly situated homeowners. Instead, any home that is a product of original construction, unoccupied as a dwelling from the completion of its construction until the point of its original sale, constitutes a “new residence” for NRS Chapter 40 purposes, and thus, subsequent owners may bring an NRS Chapter 40 action,
 
 [3]
 
 so long as it is instituted within the limitation period provided by the applicable statute of repose.
 

 FACTS
 

 Primarily alleging that defects existed with respect to the exterior stucco of their residences and the residences of others in the Sun City Summerlin community of Las Vegas, Nevada, real parties in interest instituted the underlying constructional defect action against Sun City Summerlin’s developers, including petitioner Del Webb Communities, Inc. Asserting causes of action for negligence, negligence per se, breach of various implied warranties, and willful misconduct, real parties in interest sought, among other remedies, those available under Nevada’s residential constructional defect statutes, NRS 40.600 through NRS 40.695.
 

 After answering real parties in interest’s complaint, Del Webb instituted a third-party action against various subcontractors with which it had contracted to perform work in the Sun City Summerlin community during its construction, including petitioners ANSE, Inc.; MS Concrete Company; Pratte Development Company, Inc.; and Dean Roofing, Inc.
 
 [4]
 
 In its third-party complaint, Del Webb asserted various tort and contract causes of action and sought, among other remedies, indemnity and contribution for any damages that the district court determined Del Webb owed to real parties in interest.
 

 Thereafter, this court entered an opinion in an unrelated constructional defect case,
 
 Westpark Owners’ Ass’n
 
 v.
 
 District Court,
 

 [5]
 

 in which we examined the scope of NRS Chapter 40 residential constructional defect remedies. Specifically, in determining whether NRS Chapter 40 applied to claims of alleged defects in condominium units that were previously rented as apartments, we noted that under NRS 40.615 “constructional defect” is defined as a certain kind of defect in a “new residence.” Thus, in
 
 Westpark,
 
 we primarily addressed what constituted a “new residence” and
 
 *866
 
 was thus susceptible to a “constructional defect” under NRS 40.615.
 
 [6]
 
 We ultimately determined that a “new residence” is “a product of original construction that has been unoccupied as a dwelling from the completion of its construction until the point of sale.’ ’
 
 [7]
 

 Under that definition, petitioners in the present matter asserted below that NRS Chapter 40 governed only constructional defect matters pertaining to homes that have been continuously owned by the original purchaser. Believing that approximately 700 of the homes at issue in the underlying action had not been continuously owned by the original purchaser and thus did not constitute ‘ ‘new residences” susceptible to constructional defects remediable under NRS Chapter 40, petitioners moved the district court for summary judgment with respect to their NRS Chapter 40 liability regarding those homes. In particular, petitioners asserted that because ownership of those approximately 700 homes had changed since Del Webb sold the homes to the original purchasers, the homes failed to constitute “new residences” for NRS Chapter 40 purposes. Thus, petitioners contended that they were entitled to summary judgment as to their NRS Chapter 40 liability on claims related to those residences.
 

 Real parties in interest opposed .petitioners’ motion, arguing that in light of Nevada’s residential constructional defect statutes’ purposes to promote settlement between homeowners and contractors and to provide contractors with an opportunity to repair, this court’s definition of “new residence” in
 
 Westpark
 
 should not be applied to restrict Nevada’s residential constructional defect statutes’ application to initial purchasers, a purportedly small class of homeowners. According to real parties in interest, Nevada’s constructional defect statutes’ legislative history and this court’s decisional law indicate that the Legislature did not intend to preclude subsequent purchasers from the NRS Chapter 40 remedies. In so arguing, real parties in interest contended that
 
 Westpark
 
 is factually distinguishable from this case and, thus, inapposite. Real parties in interest, moreover, relied on the definition of a constructional defect “claimant” set forth in NRS 40.610(1), which provides that a “claimant” is “[a]n owner of a residence” and does not distinguish between original and subsequent purchasers of a residence.
 

 The district court ultimately denied petitioners’ motion for summary judgment, unconvinced that, in light of NRS 40.610’s definition of a constructional defect “claimant” and Westpark's unique facts, subsequent purchasers of recently constructed homes were precluded from the remedies that NRS Chapter 40 provides. This
 
 *867
 
 petition for extraordinary mandamus relief followed. Real parties in interest have timely filed their answer, as directed, and three amicus briefs supporting the arguments set forth by real parties in interest have been filed, as permitted.
 
 [8]
 

 DISCUSSION
 

 A writ of mandamus is available to compel the performance of an act that the law requires, or to control a manifest abuse of discretion.
 
 [9]
 
 To obtain a writ of mandamus, petitioners must demonstrate that they have a sufficient beneficial interest in such relief.
 
 [10]
 
 Mandamus, moreover, is an extraordinary remedy, and the decision to entertain such a petition is addressed solely to our discretion.
 
 [11]
 
 We generally will not exercise our discretion to consider petitions for extraordinary writ relief that challenge district court orders denying motions for summary judgment, unless summary judgment is clearly required by a statute or rule, or an important issue of law requires clarification.
 
 [12]
 

 As an initial matter, real parties in interest raise two procedural arguments against our consideration of this petition. First, real parties in interest contend that ANSE, MS Concrete, Pratte Development, and Dean Roofing, third-party defendants below, lack standing to seek extraordinary writ relief from this court. Second, real parties in interest argue that numerous disputed factual issues exist, which generally weighs against our intervention by way of extraordinary relief. After addressing those threshold issues, we will address petitioners’ argument that this court’s decision in
 
 Westpark
 
 precludes the vast majority of homeowners in this case from obtaining relief under NRS Chapter 40’s residential constructional defect provisions.
 

 Whether certain real parties in interest have a beneficial interest in obtaining writ relief
 

 Whether ANSE, MS Concrete, Pratte Development, and Dean Roofing have standing to seek extraordinary writ relief from this court is essentially a question of whether those subcontractors
 
 *868
 
 have a sufficient beneficial interest in obtaining writ relief.
 
 [13]
 
 According to real parties in interest, ANSE, MS Concrete, Pratte Development, and Dean Roofing lack a sufficient beneficial interest to seek writ relief with respect to real parties in interest’s district court complaint because in it they assert claims against only Del Webb entities. As they have not asserted any causes of action against ANSE, MS Concrete, Pratte Development, and Dean Roofing, who are third-party defendants below, real parties in interest contend that those subcontractors lack a sufficient beneficial interest in obtaining relief with respect to petitioners’ claims against Del Webb.
 

 A beneficial interest is a “ ‘direct and substantial interest that falls within the zone of interests to be protected by the legal duty asserted’[; thus] ‘the writ must be denied if the petitioner will gain no direct benefit from its issuance and suffer no direct detriment if it is denied.’ ”
 
 [14]
 
 ANSE, as the subcontractor that initiated the partial summary judgment motion in the district court, which Del Webb joined, and MS Concrete, Pratte Development, and Dean Roofing ostensibly will directly benefit from obtaining the writ relief that they seek.
 
 [15]
 
 In particular, Del Webb’s third-party complaint, in part, seeks indemnification and contribution from those subcontractors for any damages that the district court determines Del Webb owes to real parties in interest. If those subcontractors successfully demonstrate that up to approximately 700 of over 1,200 real parties in interest are not entitled to the remedies of Nevada’s residential constructional defect statutes, the potential amount of any damages that the district court determines Del Webb owes could be significantly reduced. This may correspondingly reduce the potential amount of any indemnification or contribution that the district court determines the subcontractors owe to Del Webb based on its third-party complaint against them. It thus appears that ANSE, MS Concrete, Pratte Development,
 
 *869
 
 and Dean Roofing may gain a direct benefit from this court’s issuance of a writ of mandamus in this case. Accordingly, those petitioners have standing to seek our intervention by way of extraordinary relief.
 

 Whether the purported existence of numerous factual issues precludes our consideration of the petition in this case
 

 Regarding real parties in interest’s argument that numerous factual issues weigh against our consideration of this matter, they maintain that, although petitioners contend that approximately 700 homes relevant to this case are no longer owned by the original purchasers and, thus, are not “new residences” under NRS 40.615, the record is unclear as to precisely which homes have changed hands. Further, according to real parties in interest, although the original purchasers no longer own many of the homes involved in this action, the change of ownership in many cases is a mere technicality, as the original purchasers have simply transferred their homes’ title to a related trust or corporate entity, or what appear to be changes in ownership are mere clerical corrections and name changes due to death or marriage. According to real parties in interest, the task of determining which homes in fact no longer are owned by the original purchasers and for which homes the original purchasers have merely transferred title to a related entity, corrected clerical errors, or updated name changes has not been undertaken, and thus this matter is not appropriate for our consideration.
 

 Nonetheless, our consideration of this petition does not necessitate addressing those alleged factual issues. That is, determining whether the requirement that a residence be new for NRS Chapter 40 purposes precludes a homeowner who has not continuously owned his or her residence since its completion from receiving any NRS Chapter 40 remedies does not involve the related factual disputes concerning whether a change in ownership has actually taken place with respect to the 700 homes. Moreover, the petition raises important legal issues that require clarification with regard to the
 
 Westpark
 
 definition of “new residence.” Accordingly, we exercise our discretion to consider this petition.
 

 Whether a homeowner who is not the home’s original purchaser may obtain NRS Chapter 40’s remedies for residential constructional defects
 

 With respect to the primary issue that this petition raises— whether the definition of “new residence” set forth in
 
 Westpark
 
 
 *870
 
 precludes a homeowner who is not the home’s original purchaser from obtaining NRS Chapter 40 remedies for constructional defects in the home — we note that NRS Chapter 40 remedies are available for damages that are “proximately caused by a constructional defect.”
 
 [16]
 
 NRS 40.615 defines “constructional defect” to be a “defect in the design, construction, manufacture, repair or landscaping of a new residence.” Thus, if a defect arises in a residence that is not “new” under the terms of NRS 40.615, then the defect is not the type of “constructional defect” that entitles the constructional defect claimant to the remedies set forth in NRS 40.655.
 
 [17]
 

 Recently, in
 
 Westpark,
 
 we explained that the term “new residence,” as used in Nevada’s residential constructional defect statutes, referred to “a product of original construction that has been unoccupied as a dwelling from the completion of its construction until the point of sale.”
 
 [18]
 
 Based on that definition, petitioners assert that only homes that have been continuously owned by the original purchasers are susceptible to “constructional defects” for NRS Chapter 40 purposes. Under petitioners’ interpretation, once a home’s original purchaser sells the home, the home no longer qualifies as a “new” residence. According to petitioners, then, as approximately 700 of the homes at issue in this case have not been continuously owned by the original purchasers, those homes’ subsequent owners are not entitled to NRS Chapter 40’s remedies. We disagree.
 

 Westpark’s definition of “new residence” rather straightforwardly provided that a residence is new for constructional defect purposes if it remained unoccupied as a dwelling from the completion of its construction merely until the point of its first sale,
 
 i.e., “the
 
 point of sale.”
 
 [19]
 
 Nonetheless, Westpark’s definition could arguably be read, as petitioners maintain, as applying to a residence’s latest sale, meaning that when a home has had multiple owners, subsequent purchasers would be denied NRS Chapter 40 remedies because the homes were not unoccupied from the date of completion to the most recent sale.
 

 But petitioners’ expansion of “new residence” in
 
 Westpark
 
 as precluding a homeowner who is not the home’s original purchaser from obtaining the remedies available under NRS Chapter 40 violates that chapter’s spirit, leads to unreasonable and absurd results, and ignores
 
 Westpark’s
 
 unique factual background. Specifically,
 
 *871
 
 Nevada’s residential constructional defect provisions are intended to provide expansive remedies for homeowners
 
 [20]
 
 and protection for developers
 
 [21]
 
 in resolving constructional defect disputes. Petitioners’ interpretation of “new residence,” however, would significantly reduce the availability of NRS Chapter 40’s remedies and protections to homeowners and developers, forcing those parties to resolve constructional defect disputes outside of that statutory scheme. Indeed, the owners of almost 60 percent of the residences involved in this case may not obtain the NRS Chapter 40 residential constructional defect remedies, according to petitioners. That result subverts the Legislature’s intent for NRS Chapter 40 — to provide a comprehensive structure for homeowners and developers to resolve constructional defect disputes.
 
 [22]
 

 In further violation of recognized rules of statutory construction, petitioners’ interpretation of “new residence” also leads to unreasonable results.
 
 [23]
 
 For instance, under petitioners’ interpretation of “new residence,” the second owner of a one-year-old home containing a constructional defect may not seek the remedies for that defect pursuant to NRS Chapter 40 because he is not the home’s first owner, but a neighboring original purchaser of an identical home may seek NRS Chapter 40’s remedies for the same type of constructional defect.
 

 As another example, an interpretation of “new residence” that precludes from NRS Chapter 40’s remedies a homeowner who has not continuously owned the home since its completion also appears to lead to disparate treatment among otherwise similarly situated homeowners under NRCP 25(c). NRCP 25(c) provides that an action may be “continued by or against the original party” in case of any transfer of interest. Under NRCP 25(c), applying petition
 
 *872
 
 ers’ definition of “new residence,” a subsequent purchaser arguably could maintain an action under NRS Chapter 40 against a developer so long as he or she purchased the home after the original purchaser commenced the constructional defect action. But a subsequent homeowner who purchased the home before any constructional defect action was commenced could not obtain NRS Chapter 40 remedies.
 
 [24]
 
 In essence, petitioners’ interpretation of “new residence” leads to disparate treatment among similarly situated homeowners.
 

 Finally, with respect to petitioner’s contention that the term “new residence” in NRS 40.615, as explained in
 
 Westpark,
 
 precludes any homeowner who is not the home’s first purchaser from obtaining NRS Chapter 40’s residential constructional defect remedies, petitioners ignore
 
 Westpark’s
 
 distinct factual background, which is distinguishable from this case. In
 
 Westpark,
 
 we considered whether condominiums leased as apartments before they were first offered for sale and purchased constituted new residences.
 
 [25]
 
 That case centered on the unusual situation when a residence is occupied as a dwelling before its first sale. We highlighted that distinction when we noted other circumstances that often occur before a residence’s first sale but do not disturb the residence’s “newness,” under NRS 40.615 — a “residential dwelling left vacant for a period of time or used as a model home before sale.’ ’
 
 [26]
 
 Thus, petitioners’ argument that the term “new residence” in NRS 40.615, as explained in
 
 Westpark,
 
 precludes any homeowner who is not the home’s first purchaser from obtaining NRS Chapter 40’s residential constructional defect remedies ignores
 
 Westpark’s
 
 factual implications.
 

 While petitioners’ expanded meaning of “new residence” set forth in
 
 Westpark
 
 is unpersuasive, it highlights the need for us to clarify the definition of “new residence.” As
 
 Westpark
 
 implies, a residence is new for constructional defect purposes if it is a product of original construction that has been unoccupied as a dwelling from the completion of its construction until the point of its
 
 original sale.
 

 [27]
 

 Thus, the subsequent owner of a home that is a prod
 
 *873
 
 uct of original construction, unoccupied as a dwelling from the completion of its construction until the point of its first sale, is not precluded under NRS 40.615 from seeking NRS Chapter 40 residential constructional defect remedies,
 
 [28]
 
 so long as he or she does so within the limitation period provided by the applicable statute of repose.
 
 [29]
 
 In this way, the meaning of “new residence” is faithful to the spirit of NRS Chapter 40 — to provide an expansive remedy to homeowners and protection for developers.
 
 [30]
 

 Further, allowing homeowners who are not the home’s original purchasers to seek NRS Chapter 40’s remedies is in harmony with the other provisions of NRS Chapter 40, in particular, NRS 40.610.
 
 [31]
 
 NRS 40.610 defines a constructional defect claimant as “[a]n owner of a residence” — without qualification. NRS 40.610 plainly does not require that a constructional defect claimant be a residence’s first owner, as petitioners’ interpretation of “new residence” suggests, or expressly impose any other limitation. Instead, to be a constructional defect claimant, one need only own the residence, and under NRS 40.615, the residence must be a product of original construction that was unoccupied as a dwelling from the completion of its construction until the point of its first sale.
 

 Here, then, the apparent fact that many homeowners in the underlying constructional defect action are not the original owners of their homes does not preclude those homeowners from obtaining the remedies available under NRS Chapter 40 for any constructional defects present in their homes. To the extent that the homes remained unoccupied as dwellings from the completion of their construction to the point of their first sale, the homes’ subsequent owners are not precluded under the definition of “new residence” from pursuing NRS Chapter 40 actions with respect to any constructional defects in those homes. Accordingly, the district court did not manifestly abuse its discretion when it denied partial summary judgment to petitioners.
 

 CONCLUSION
 

 We clarify that a “new residence” under NRS 40.615 is one that has remained unoccupied as a dwelling from the completion of its construction to the point of its first sale. Thereafter, subsequent
 
 *874
 
 owners of that residence, as claimants, may seek NRS Chapter 40’s residential constructional defect remedies, so long as the action is instituted within the applicable statute of repose. In this way, the term “new residence” operates in harmony with the Legislature’s intent in enacting Nevada’s residential constructional defect provisions. The district court correctly denied partial summary judgment to petitioners, and therefore, we deny this petition for a writ of mandamus.
 

 Gibbons, C. L, Maupin, Parraguirre, Douglas, Cherry and Saitta, JJ., concur.
 

 [1]
 

 See also
 
 NRS 40.655(1) (setting forth remedies available for residential “constructional defect[s]”).
 

 [2]
 

 123 Nev. 349, 360, 167 P.3d 421, 429 (2007).
 

 [3]
 

 See
 
 NRS 40.610; NRS 40.615.
 

 [4]
 

 After ANSE filed this petition, Del Webb, MS Concrete Co., Pratte Development Co., and Dean Roofing filed a joinder to the petition. MS Concrete, Pratte Development, and Dean Roofing, like ANSE, apparently were subcontractors for the Sun City Summerlin development and appear to be third-party defendants below, although the record is not entirely clear in those respects.
 

 [5]
 

 123 Nev. 349, 167 P.3d 421.
 

 [6]
 

 Id.
 
 at 358-60, 167 P.3d at 428-29.
 

 [7]
 

 Id.
 
 at 360, 167 P.3d at 429.
 

 [8]
 

 Monarch Estates Homeowners Association, South Park Condominium Association, and Marquesa Homeowners Association have submitted an amicus brief, and Safe Home Nevada, Inc., and Nevada Justice Association have each submitted an amicus brief.
 

 [9]
 

 See
 
 NRS 34.160;
 
 Round Hill Gen. Imp. Dist.
 
 v.
 
 Newman,
 
 97 Nev. 601, 637 P.2d 534 (1981).
 

 [10]
 

 NRS 34.170.
 

 [11]
 

 See Poulos
 
 v.
 
 District Court,
 
 98 Nev. 453, 455, 652 P.2d 1177, 1178 (1982).
 

 [12]
 

 Smith v. District Court,
 
 113 Nev. 1343, 950 P.2d 280 (1997).
 

 [13]
 

 Secretary of State v. Nevada State Legislature,
 
 120 Nev. 456, 460-61, 93 P.3d 746, 749 (2004) (providing that to establish standing to seek writ relief, the petitioner must “demonstrate a ‘beneficial interest’ in obtaining writ relief” (citing NRS 34.170)).
 

 [14]
 

 Id. at 461, 93 P.3d at 749 (quoting
 
 Lindelli
 
 v.
 
 Town of San Anselmo,
 
 4 Cal. Rptr. 3d 453, 461 (Ct. App. 2003), and
 
 Waste Management v. County of Alameda,
 
 94 Cal. Rptr. 2d 740, 747 (Ct. App. 2000)).
 

 [15]
 

 We note that, contrary to their argument here, in the district court real parties in interest essentially acknowledged ANSE’s standing to challenge their claims against Del Webb when, in their opposition to ANSE’s motion for partial summary judgment, they suggested that ANSE could still seek relief based on
 
 Westpark,
 
 albeit according to their understanding of that case.
 

 [16]
 

 NRS 40.655(1).
 

 [17]
 

 NRS Chapter 40 also provides remedies for defects contained in a new appurtenance and in alterations or additions to an existing residence or appurtenance.
 
 See
 
 NRS 40.615; NRS 40.655.
 

 [18]
 

 Westparlc Owners’ Ass’n v. Dist. Ct.,
 
 123 Nev. 349, 360, 167 P.3d 421, 429 (2007).
 

 [19]
 

 Id.
 
 (emphasis added).
 

 [20]
 

 Id.
 
 (recognizing that the purpose of Nevada’s residential constructional defect statutes is to provide “homeowners a fairly expansive remedy”).
 

 [21]
 

 See
 
 NRS 40.645; NRS 40.647; NRS 40.655;
 
 D.R. Horton v. Dist. Ct.,
 
 123 Nev. 468, 479, 168 P.3d 731, 739 (2007).
 

 [22]
 

 Westpark,
 
 123 Nev. at 357, 167 P.3d at 427;
 
 see also McKay v. Bd. of Supervisors,
 
 102 Nev. 644, 648, 730 P.2d 438, 441 (1986) (providing that the meaning attributed to a statute may not violate the spirit of the statutory scheme of which it is a part).
 

 The testimony of a representative of Southern Nevada Home Builders before the Assembly Committee on the Judiciary noted the “fairly chaotic” situation that resulted from homeowners and developers attempting to resolve constructional defect disputes before Nevada’s residential constructional defect statutes were enacted, underscoring the Legislature’s intent to alleviate that confusion through the enactment of NRS Chapter 40’s residential constructional defect provisions. Hearing on S.B. 395 Before the Assembly Comm, on Judiciary, 68th Leg. (Nev., June 23, 1995).
 

 [23]
 

 Harris Assocs.
 
 v.
 
 Clark County Sch. Dist.,
 
 119 Nev 638, 642, 81 P.3d 532, 534 (2003) (noting that the interpretation of a statute’s language should not produce unreasonable or absurd results).
 

 [24]
 

 See also
 
 NRCP 17(a) (providing that “[e]very action shall be prosecuted in the name of the real party in interest!, and n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action”).
 

 [25]
 

 Westpark,
 
 123 Nev. at 352-53, 167 P.3d at 424.
 

 [26]
 

 Id.
 
 at 360, 167 P.3d at 429.
 

 [27]
 

 Id.
 
 (stating that a home is “new” under NRS 40.615 if it remained unoccupied as a dwelling from the completion of its construction to
 
 “the
 
 point of sale”) (emphasis added).
 

 [28]
 

 See
 
 NRS 40.610; NRS 40.615.
 

 [29]
 

 See, e.g.,
 
 NRS 11.202; NRS 11.203; NRS 11.204; NRS 11.205.
 

 [30]
 

 See McKay
 
 v.
 
 Bd. of Supervisors,
 
 102 Nev. 644, 648, 730 P.2d 438, 441 (1986) (noting that a statute’s interpretation may not violate the spirit of the act of which it is a part).
 

 [31]
 

 See id.
 
 at 650-51, 730 P.2d at 443 (indicating that whenever possible, this court will interpret a statute in harmony with other rules and statutes).