130 Nev., Advance Opinion 94

# IN THE SUPREME COURT OF THE STATE OF NEVADA

NEVADA ASSOCIATION SERVICES, INC.; AND PECCOLE RANCH COMMUNITY ASSOCIATION, Petitioners,

vs.

THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE SUSAN SCANN, DISTRICT JUDGE, Respondents,

and

ELSINORE, LLC, ON BEHALF OF ITSELF AND AS REPRESENTATIVE OF THE CLASS DEFINED HEREIN; AND G.J.L., INCORPORATED, Real Parties in Interest.

No. 62748



FILED

DEC 04 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Original petition for a writ of mandamus or prohibition challenging a district court order denying a motion to dismiss and a district court order denying a motion for summary judgment in a real property action.

*Petition granted in part and denied in part.*

Holland & Hart LLP and Patrick J. Reilly and Nicole E. Lovelock, Las Vegas,
for Petitioner Nevada Association Services, Inc.

Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP, and Michael J. Lemcool, Don Springmeyer, and Gregory P. Kerr, Las Vegas,
for Petitioner Peccole Ranch Community Association.

Adams Law Group and James R. Adams, Las Vegas,
for Real Party in Interest Elsinore, LLC.

14-39446

Johns & Durrant, LLP, and Lance W. Johns, Las Vegas,
for Real Party in Interest G.J.L., Incorporated.

---

BEFORE THE COURT EN BANC.[1]

*OPINION*

By the Court, SAITTA, J.:

"The voluntary payment doctrine is a long-standing doctrine of law, which clearly provides that one who makes a payment voluntarily cannot recover it on the ground that he was under no legal obligation to make the payment." *Best Buy Stores v. Benderson-Wainberg Assocs.*, 668 F.3d 1019, 1030 (8th Cir. 2012) (internal quotations omitted). This doctrine precludes recovery of a voluntary payment unless the party can demonstrate that it meets an exception to the doctrine.

At issue here is whether the voluntary payment doctrine applies in Nevada to bar a property owner from recovering fees that it paid to a community association and, if so, whether the property owner demonstrated an exception to this doctrine by showing that the payments were made under business compulsion or in defense of property. We hold that the doctrine is valid in Nevada and that the property owner did not show an exception which would preclude its application in the present case.

---

[1]The Honorable Mark Gibbons, Chief Justice, voluntarily recused himself from participation in the decision of this matter.

*FACTUAL AND PROCEDURAL HISTORY*

Real party in interest Elsinore, LLC, purchased a property located within the Peccole Ranch planned community at a foreclosure auction. Prior to the foreclosure and sale, petitioner Peccole Ranch Community Association placed a lien on the property for unpaid community-association assessments. After purchasing the property, Elsinore sent a letter to Peccole Ranch requesting an accounting statement regarding the property's assessments and stating that it would not pay any assessments or fees that were not authorized by NRS 116.3116. Real party in interest G.J.L., Incorporated, d.b.a. Pro Forma Lien and Foreclosure Services, an agent of Peccole Ranch, responded with a letter to Elsinore demanding payment of outstanding association dues and advising Elsinore that a lien was in place on its property. Elsinore paid the demand and then sold the property.

Nearly three years after it sold the property, Elsinore filed a complaint against Peccole Ranch with the Nevada Real Estate Division (NRED) on behalf of itself and a class of similarly situated property owners. It alleged that Peccole Ranch had made excessive lien demands in violation of NRS 116.3116 and the Peccole Ranch covenants, conditions, and restrictions (CC&Rs). Elsinore and Peccole Ranch unsuccessfully mediated the NRED complaint and disputed whether they were mediating only Elsinore's claims or all of the purported class's claims.

Subsequently, Peccole Ranch filed a district court action against Elsinore, seeking declaratory relief regarding the application of NRS 116.3116 to its CC&Rs. Elsinore answered and filed a counterclaim for declaratory relief and damages on behalf of itself and the class identified in the NRED complaint. The district court certified the class and appointed Elsinore's attorneys as class counsel. Peccole Ranch filed a

motion to dismiss the class members' unmediated and unarbitrated counterclaims, which the district court denied. Peccole Ranch then filed a third-party complaint against petitioner Nevada Association Services (NAS), another agent of Peccole Ranch, seeking indemnification and contribution for any damages that Elsinore and the class of property owners recovered from Peccole Ranch.

NAS filed a motion for summary judgment, which Peccole Ranch joined, arguing that the voluntary payment doctrine bars Elsinore's and the class members' claims for damages. The district court denied the motion for summary judgment, concluding that the voluntary payment doctrine did not apply to Elsinore because Elsinore had paid Peccole Ranch under duress and to save its property.

NAS then filed the current writ petition, which Peccole Ranch also joined, challenging both the district court's denial of Peccole Ranch's motion to dismiss and the denial of NAS and Peccole Ranch's motion for summary judgment.

## DISCUSSION

"A writ of mandamus is available to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station or to control an arbitrary or capricious exercise of discretion." *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008) (citations omitted); *see* NRS 34.160. "'A writ of prohibition is appropriate when a district court acts without or in excess of its jurisdiction.'" *Sandpointe Apartments, LLC v. Eighth Judicial Dist. Court*, 129 Nev. ___, ___, 313 P.3d 849, 852 (2013) (quoting *Cote H. v. Eighth Judicial Dist. Court*, 124 Nev. 36, 39, 175 P.3d 906, 907 (2008)). Because a writ is an extraordinary remedy, "we will exercise our discretion

to consider such a petition only when there is no plain, speedy and adequate remedy in the ordinary course of law or there are either urgent circumstances or important legal issues that need clarification in order to promote judicial economy and administration." *Cheung v. Eighth Judicial Dist. Court*, 121 Nev. 867, 869, 124 P.3d 550, 552 (2005) (internal quotations omitted). "Therefore, 'we generally will not exercise our discretion to consider petitions for extraordinary writ relief that challenge district court orders denying motions for summary judgment, unless summary judgment is clearly required by a statute or rule, or an important issue of law requires clarification.'" *Sandpointe*, 129 Nev. at ___, 313 P.3d at 852 (quoting *ANSE, Inc. v. Eighth Judicial Dist. Court*, 124 Nev. 862, 867, 192 P.3d 738, 742 (2008)).

The present petition involves significant unsettled questions of law regarding the application of the voluntary payment doctrine in Nevada. Thus, the petition presents "'an important issue of law requir[ing] clarification,'" which may be significant to other litigation involving common-interest community assessments. *See id.* (quoting *ANSE, Inc.*, 124 Nev. at 867, 192 P.3d at 742). Additionally, this case is in the early stages of litigation and postponing consideration of this issue would not serve the interests of the parties, judicial economy, nor the wider community. We therefore exercise our discretion to entertain the merits of the writ petition with regard to the application of the voluntary payment doctrine.[2]

---

[2]We decline to exercise our discretion, however, with regard to the district court's denial of Peccole Ranch's motion to dismiss. *See Cheung*, 121 Nev. at 869, 124 P.3d at 552 (holding that this court has discretion to consider a writ petition).

 

*The voluntary payment doctrine applies to Elsinore's payments*

The voluntary payment doctrine is an affirmative defense that "provides that one who makes a payment voluntarily cannot recover it on the ground that he was under no legal obligation to make the payment." *Best Buy Stores v. Benderson-Wainberg Assocs.*, 668 F.3d 1019, 1030 (8th Cir. 2012) (internal quotations omitted). "The 'voluntary' in the voluntary payment doctrine does not entail the mere payment of the bill or fee." *Putnam v. Time Warner Cable of Se. Wis.*, 649 N.W.2d 626, 632 (Wis. 2002). Instead, it considers "the willingness of a person to pay a bill *without protest as to its correctness or legality.*" *Id.* at 633. This doctrine serves to promote the "policy goals of certainty and stability" in transactions. *Berrum v. Otto*, 127 Nev. __, __ n.5, 255 P.3d 1269, 1273 n.5 (2011).

We have recognized the validity of the voluntary payment doctrine in Nevada since at least 1887, when we applied the rule to reverse a district court order allowing a county to recover for an erroneous overpayment it made to a jailor, observing that "[t]he rule is well settled that money voluntarily paid, with full knowledge of all the facts, although no obligation to make such payment existed, cannot be recovered back." *Randall v. Cnty. of Lyon*, 20 Nev. 35, 38, 14 P. 583, 584 (1887).

Recently, we discussed the voluntary payment doctrine without applying it. In *Berrum,* we discussed that while the voluntary payment doctrine generally applies to tax payments, it does not apply when a statute gives a taxpayer the right to challenge a voluntary payment. 127 Nev. at __ n.5, 255 P.3d at 1273 n.5. Thus, we held that the doctrine did not apply in that case because the taxpayers had made the disputed payments while properly challenging the property valuations that were the bases of their tax liabilities. *Id.*

The voluntary payment doctrine remains good law in Nevada. Therefore, we hold that the voluntary payment doctrine is a valid affirmative defense in Nevada.

Because the voluntary payment doctrine is an affirmative defense, the defendant bears the burden of proving its applicability. *See Schwartz v. Schwartz*, 95 Nev. 202, 206 n.2, 591 P.2d 1137, 1140 n.2 (1979) (stating that a defendant bears the burden of proving each element of an affirmative defense). Once a defendant shows that a voluntary payment was made, the burden shifts to the plaintiff to demonstrate that an exception to the voluntary payment doctrine applies. *See Randazzo v. Harris Bank Palatine, N.A.*, 262 F.3d 663, 666 (7th Cir. 2001) (noting that "a plaintiff who voluntarily pays money in reply to an incorrect or illegal claim of right cannot recover that payment unless he can show fraud, coercion, or mistake of fact"). If an exception applies, a plaintiff is not precluded from recovering a payment that it made without protest. *See Ross v. City of Geneva*, 357 N.E.2d 829, 836 (Ill. App. Ct. 1976) (stating that "the mere payment, without protest, . . . does not constitute waiver of a right to recovery" when an exception applies), *aff'd*, 373 N.E.2d 1342, 1347 (Ill. 1978). Therefore, we first address whether petitioners have demonstrated that this affirmative defense applies before considering whether Elsinore established that an exception to the voluntary payment doctrine exists.

*NAS and Peccole Ranch demonstrated that the voluntary payment doctrine applies to Elsinore's claims*

In its counterclaim, Elsinore admitted that it paid Peccole Ranch's assessment. In addition, NAS submitted documentation of Elsinore's payment. Elsinore did not argue that it made its payment

SUPREME COURT
OF
NEVADA

(O) 1947A

under protest or without knowledge of the facts. Because of Elsinore's admission and the documentation of Elsinore's payment, NAS met its burden of showing that Elsinore made a voluntary payment.

The record does not demonstrate, however, that petitioners presented any evidence to the district court to show that any other class member made a voluntary payment. Therefore, NAS and Peccole Ranch have not met their burden of showing that the voluntary payment doctrine precludes the remaining class members' claims.

*Elsinore has not demonstrated that an exception to the voluntary payment doctrine applies*

Elsinore argues that two exceptions to the voluntary payment doctrine preclude its application in the present case. These exceptions are (1) coercion or duress caused by a business necessity and (2) payment in defense of property.[3] We do not address whether other exceptions to the voluntary payment doctrine could apply.

---

[3]Elsinore also argues that an exception to the voluntary payment doctrine exists for situations that involve a payee's improper conduct. This exception applies, however, where the improper conduct induces the payee's mistake of law. *See, e.g., Time Warner Entm't Co. v. Whiteman*, 802 N.E.2d 886, 889 (Ind. 2004) ("Generally a voluntary payment made under a mistake or in ignorance of law, but with a full knowledge of all the facts, and not induced by any fraud or improper conduct on the part of the payee, cannot be recovered back." (internal quotations omitted)); *cf. Smith v. Prime Cable of Chi.*, 658 N.E.2d 1325, 1329 (Ill. App. Ct. 1995) (stating that a payee's assertion that a claim was illegal does not, by itself, create an exception to the voluntary payment doctrine). Since Elsinore does not allege that a payee's improper conduct caused it to make a mistake of law, this exception is inapplicable in the present case.

*Elsinore has not demonstrated that business necessity caused it to make the payment*

The coercion or duress exception applies when "(1) . . . one side involuntarily accepted the terms of another; (2) . . . circumstances permitted no other alternative; and (3) . . . circumstances were the result of coercive acts of the opposite party." *Emp'rs Ins. of Wausau v. United States*, 764 F.2d 1572, 1576 (Fed. Cir. 1985) (internal quotations omitted). Business necessity can constitute duress for the purposes of this exception. *Randazzo*, 262 F.3d at 669. Business necessity constituting duress occurs when the payor has only a single "commercially reasonable course of action," despite the fact that the action involves a choice, in some limited sense. *Ross*, 357 N.E.2d at 836.

In *Ross*, a municipal power company threatened to terminate electrical service to the plaintiffs' businesses if they failed to pay the power company's disputed charges. *Id.* Because the power company was "the sole provider of electricity to the [plaintiffs'] commercial enterprises" and no formal or statutory mechanism to challenge or protest the charges existed, the plaintiffs' payment of the disputed charges "was the commercially reasonable action under the circumstances." *Id.* As a result, the voluntary payment doctrine did not preclude their claims. *Id.*

When a party has other reasonable alternatives to payment, however, its decision to pay is not made under duress. In *Employers Insurance of Wausau*, an insurance company sought to recover an alleged overpayment that it made in response to the federal government's demand relating to a government contractor's nonpayment of a liability for which the insurance company was a surety. 764 F.2d at 1573-74. The federal government threatened to remove the insurance company from the list of approved sureties for government contracts if it failed to make the alleged

Supreme Court
of
Nevada

(O) 1947A

9

overpayment. *Id.* at 1574. In considering the issue of duress, the Federal Circuit Court observed that the insurance company had other alternatives to paying the federal government's demand, such as requesting a delay of the payment as was authorized by federal law. *Id.* at 1576. Thus, the federal government's threat to remove the insurance company from the list of approved sureties for government contracts if it failed to pay or request a delay did not cause duress by business necessity. *Id.* As a result, the voluntary payment doctrine applied and prohibited the insurance company's claim. *Id.*

Unlike *Ross*, where no other electricity supplier could serve the plaintiffs and there was no mechanism for protest, Elsinore did not meet its burden to demonstrate that it lacked a reasonable alternative to paying the lien. Although Elsinore filed an NRED complaint three years *after* it paid the lien amount, it could have sought NRED arbitration or mediation *prior* to paying the lien. Thus, Elsinore's decision to pay was not made under duress because it had reasonable alternatives at the time of payment. *See Employers Ins. of Wausau*, 764 F.2d at 1575-76; *see also* NRS 38.310 (providing that parties must mediate or arbitrate CC&R-based claims before pursuing civil litigation, thus demonstrating that meditation and arbitration were available to Elsinore). Further, Elsinore did not demonstrate that NRED arbitration or mediation would have been too expensive or too slow to be reasonable. Instead, Elsinore and the class's attorney argued at the summary judgment hearing that arbitration was too slow for Elsinore's business model. "Arguments of counsel[, however,] are not evidence and do not establish the facts of the case," *Jain v. McFarland*, 109 Nev. 465, 475-76, 851 P.2d 450, 457 (1993). Therefore, Elsinore failed to provide any evidence to demonstrate that the

NRED arbitration was not a reasonable alternative to paying the lien and, unlike *Ross*, where no other electricity supplier could serve the plaintiffs, Elsinore did not demonstrate that paying Peccole Ranch was its only commercially reasonable course of action. *See Ross*, 357 N.E.2d at 836. Because the record does not support the district court's conclusion that Elsinore paid under duress, the district court erred in finding that Elsinore was under duress caused by a business necessity when it paid the full amount of Peccole Ranch's lien.

*Elsinore did not demonstrate that it paid in defense of property*

The second exception that Elsinore proffers is the payment in defense of property exception. We recognized this exception in *Cobb v. Osman*, where we stated that "[i]t is well settled that one is not a volunteer or stranger when he pays to save his interest in his property." 83 Nev. 415, 421, 433 P.2d 259, 263 (1967). In *Cobb*, a property seller made payments on a loan secured by a mortgage on the property, even though the buyer had assumed the loan, after the buyer failed to make her loan payments and a notice of default was recorded. *Id.* at 417-20, 433 P.2d at 260-62. Though the seller had no legal duty to make payments on the buyer's loan, the seller retained ownership of two other properties securing the loan, and thus nonpayment of the loan would have subjected the seller's two other properties to foreclosure. *Id.* at 421, 433 P.2d at 263. Because the seller had paid the mortgage to save his interest in the two other properties that secured the mortgage, the *Cobb* court concluded that the voluntary payment doctrine did not prevent the seller from recovering damages from the buyer for her failure to pay the mortgage. *Id.* at 422, 433 P.2d at 263.

The present case is distinct from *Cobb* in at least two significant ways. First, the remedy sought in *Cobb* was against a party who failed to make necessary payments, not against the recipient of a disputed payment. This distinction is important because the exception as applied in *Cobb* does not undermine the voluntary payment doctrine's policy of promoting stability of transactions.

Second, *Cobb* involved a case where the payor risked losing his property interest in foreclosure if he did not pay another's loan. Here, Elsinore did not demonstrate any such risk existed. Although Elsinore demonstrated that Peccole Ranch placed a lien on Elsinore's property, there is no evidence showing that foreclosure proceedings were imminent. "While a lien creates a security interest in property, a lien right alone does not give the lienholder right and title to property. Instead, title, which constitutes the legal right to control and dispose of property, remains with the property owner until the lien is enforced through foreclosure proceedings." *Hamm v. Arrowcreek Homeowners' Ass'n*, 124 Nev. 290, 298-99, 183 P.3d 895, 902 (2008) (citations omitted) (internal quotations omitted). Thus, a lien that is not subject to ongoing or imminent foreclosure proceedings does not create a risk of the loss of property. *See id.* (stating that a lien constitutes a monetary encumbrance that does not alter title when foreclosure proceedings have not been initiated on the lien). Furthermore, where a reasonable legal remedy is available to the payor, a payment made to relieve the lien is voluntary. *See Oxxford Clothes XX, Inc. v. Expeditors Int'l of Wash., Inc.*, 127 F.3d 574, 579 (7th Cir. 1997) (stating that a party was not under duress when it had "an entirely feasible legal remedy"); *see also City of Rochester v. Chiarella*, 448 N.E.2d 98, 102 (N.Y. 1983) (observing that the "imposition of a lien and/or

exaction of interest, without more, falls short of what is to be recognized as duress in [the] context" of a payment made to relieve a lien). *But cf. Mercury Mach. Importing Corp. v. City of New York*, 144 N.E.2d 400, 403 (N.Y. 1957) (stating that "[p]ayment after a tax has become a lien is not voluntary, for the menace of the lien *with penalties added for delay* has the effect of rendering it compulsory" (emphasis added) (internal quotations omitted)).

Therefore, Elsinore's payment to release Peccole Ranch's lien does not meet *Cobb*'s defense of property exception to the voluntary payment doctrine. As a result, the district court erred by finding that Elsinore made a payment to defend its interest in the property. Because Elsinore did not present a valid exception to the application of the voluntary payment doctrine, the district court erred by denying NAS and Peccole Ranch's motion for summary judgment with regard to Elsinore's counterclaims for damages.

## CONCLUSION

The voluntary payment doctrine provides an affirmative defense to a claim for the recovery of money that a plaintiff voluntarily paid. In the present case, NAS and Peccole Ranch demonstrated that Elsinore made a voluntary payment. Though exceptions to the voluntary payment doctrine exist, Elsinore did not demonstrate that any exception applied to the payment that it made. Thus, the district court erred by denying NAS and Peccole Ranch's motion for summary judgment against Elsinore's counterclaims for damages.

We therefore grant the petition for a writ of mandamus and order the district court to grant petitioners' motion for summary judgment with regard to Elsinore's counterclaims for damages because the voluntary

payment doctrine is a complete defense to Elsinore's claims.[4] We decline to consider the remaining issues in the petition and thus deny the remainder of the petition.

_____, J.
Saitta

We concur:

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____

[4]Because NAS and Peccole Ranch failed to meet their burden in showing that the voluntary payment doctrine applies to the remaining class members, this summary judgment is limited to Elsinore's claims only.