DONALD W. AND LINDA L. GONSKI, HUSBAND AND WIFE, PETITIONERS, v. THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF WASHOE, AND THE HONORABLE STEVEN P. ELLIOTT, DISTRICT JUDGE, RESPONDENTS, AND PN II, INC., A NEVADA CORPORATION DBA PULTE HOMES OF NEVADA, REAL PARTY IN INTEREST.

No. 53414

December 30, 2010                                          245 P.3d 1164

*Nancy A. Gilbert*, Reno, for Petitioners.

*Lee, Hernandez, Brooks, Garofalo & Blake, APC*, and *David S. Lee, Natasha L. Brooks*, and *Charlene N. Renwick*, Las Vegas, for Real Party in Interest.

Before HARDESTY, DOUGLAS and PICKERING, JJ.

## OPINION

By the Court, DOUGLAS, J.:

This original writ proceeding involves real party in interest's attempt to enforce two arbitration provisions that it drafted with respect to petitioners' purchase of a residential home in Reno, Nevada. Petitioners argue that the two arbitration clauses at issue, one of which was in the purchase agreement and the other of which was contained in a limited warranty, are unconscionable, and thus unenforceable, for a variety of reasons. Most significantly, petitioners assert that the arbitration provisions waived statutory remedies and failed to fully and clearly inform petitioners of the significant rights being forfeited. The district court disagreed, however, and compelled arbitration, causing petitioners to seek this court's review.

We conclude that the arbitration provisions at issue are unconscionable as to several aspects that, taken together, demonstrate that petitioners were not made fully aware, or given the opportunity to become aware, of the provisions' terms. In particular, the circumstances under which the provisions were signed, combined with their nonhighlighted nature, failed to provide petitioners with a meaningful opportunity to agree to the arbitration terms. Also, the first provision misleadingly suggested that real party in interest would pay the arbitration costs, while the second document, purportedly incorporated into the first, required petitioners to pay the initial arbitration costs. And finally and most significantly, the provisions' confusing language suggested that NRS Chapter 40 remedies would be fully available, even though the terms of the contract impermissibly waived most Chapter 40 homeowner protections. The provisions' confusing and misleading language created a situation in which petitioners could not reasonably be expected to understand the terms' meanings, even if they were given adequate opportunity for review. Further, they impermissibly waived statutory rights designed to effect a public purpose, in favor of real party in interest. Accordingly, the arbitration provisions governing construction defects are unconscionable, and the district court manifestly abused its discretion in compelling arbitration, such that mandamus relief is warranted.

*PROCEDURAL HISTORY AND FACTS*

In April 2004, petitioners Donald and Linda Gonski signed a purchase agreement for a home located in an age-restricted subdivision developed by real party in interest PN II, Inc., d.b.a Pulte Homes of Nevada (Pulte Homes). Several months later, the Gonskis served Pulte Homes with an NRS Chapter 40 notice of construction defects, and the parties subsequently participated in mediation. When the mediation proved unsuccessful, the Gonskis filed a district court complaint against Pulte Homes, alleging various claims based on construction defects in their home.

In response to the Gonskis' complaint, Pulte Homes moved to compel arbitration, pointing to the purchase agreement's arbitration clause:

> **ARBITRATION:** Any controversy, claim or dispute arising out of or relating to this Agreement or Your purchase of the Home (other than claims under the Limited Warranty) shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association (AAA) and the Federal Arbitration Act (Title 9 of the United States Code) and judgment rendered by the arbitrator(s) may be confirmed, entered and enforced
>
> Purchaser's Initials ___ Purchaser's Initials ___ Seller's Initials ___
>
> [page break]
>
> in any court having jurisdiction. As a condition precedent to arbitration, the dispute shall first be mediated in accordance with the Construction Industry Mediation Rules of the AAA, or such other mediation service selected by Us. Claims under the Limited Warranty will be arbitrated in accordance with the arbitration provision set forth in the Limited Warranty.
>
> In the event the claim relates to a construction defect, the construction dispute provisions (including good-faith mediation) of Chapter 40 of Nevada Revised Statutes shall also apply if and to the extent that the alleged defect is covered by the Limited Warranty.

The Gonskis opposed the motion to compel, pointing out that the purchase agreement purported to incorporate a second arbitration clause, applicable to construction defect claims, found on pages 9-10 of the home's separate limited warranty. The limited warranty's arbitration clause provides as follows:

> DISPUTE SETTLEMENT
>
> This Dispute Settlement provision sets forth the exclusive remedy of all disputes or controversies under this LIMITED WARRANTY.

. . . .

If the Plan Administrator is unable to successfully mediate the dispute, the Plan Administrator will inform THE HOME-OWNER and THE BUILDER that the dispute is unresolved and that Binding Arbitration is provided as a remedy for resolving the dispute.

. . . .

Any binding arbitration proceeding will be conducted pursuant to the United States Arbitration Act (9 U.S.C. § 1 et seq.) ("the Act") by an independent, nationally recognized, arbitration organization designated by the Plan Administrator. The rules and procedures followed will be those under the Act, which may be supplemented by the arbitration organization's rules. A copy of the applicable rules and procedures will be delivered to you upon your request to the Plan Administrator.

The arbitration will determine THE HOMEOWNER's, THE BUILDER's and (if applicable) the Insurer's rights and obligations under this LIMITED WARRANTY. These rights and obligations include, but are not limited to, those provided to THE HOMEOWNER or THE BUILDER by local, state or federal statutes in connection with this LIMITED WARRANTY. The award of the arbitrator(s) will be final, binding and enforceable as to THE HOMEOWNER, THE BUILDER and (if applicable) the Insurer, except as modified or vacated in accordance with the Act or the arbitration organization's rules. A judgment rendered by the arbitrator(s) may be confirmed, entered and enforced in any court having jurisdiction.

In their opposition, the Gonskis argued that both the purchase agreement's and the limited warranty's arbitration provisions were unconscionable and, thus, unenforceable. In so arguing, they described the circumstances under which the purchase agreement was signed, noting that they had paid a $10,000 deposit to join a lottery system to purchase a home in the specialized subdivision. A few days later, they were notified of an available residence and instructed to come to the office in five days. According to the Gonskis, when they arrived at the office, several other people were waiting; they were handed a stack of 25 preprinted forms, totaling over 469 papers, and told that if the documents were not signed and executed at that time, "there were several other people waiting to step in and purchase the residence." The Gonskis asserted that they were not given adequate time to review the documents provided to them or sufficient explanation of their contents, and they were directed to leave the documents in the office after

signing. They then pointed to several aspects of the arbitration clauses that they argued were unconscionable, including the clauses' obscurity, confusing and conflicting terms, and failure to inform both that significant rights were being waived and of potentially significant arbitration costs. The Gonskis argued that, when viewed in light of the warranty provisions limiting the scope of covered defects[1] and limiting Pulte Homes' liability to the costs of repair or replacement, the arbitration provisions left them without any remedy for many of their claims.

After considering the parties' arguments, the district court determined that the arbitration provisions were not unconscionable and entered an order compelling arbitration pursuant to the purchase agreement's arbitration provision. In particular, the district court found that no great disparity in bargaining power existed, since the Gonskis could choose another developer or refuse to buy the residence; the Gonskis had failed to establish that Pulte Homes refused to negotiate the contract's terms; the Gonskis initialed the arbitration provision, which was not hidden or inconspicuous;[2] and the arbitration provision's language was clear and unambiguous. The court concluded that the arbitration clause did not limit the Gonskis' rights ''under Nevada law'' because it expressly allowed application of NRS Chapter 40, governing construction defects; the clause was binding on all parties to the contract and could benefit any of them, and both sides were to bear their own attorney costs; the clause contained no liquidated damages provision; and although the clause failed to disclose potential arbitration costs, that failure alone did not amount to unconscionability.

Consequently, the Gonskis filed the instant petition for a writ of mandamus, challenging the district court's order. As directed, Pulte Homes timely filed an answer to the petition, and the Gonskis were permitted to file a reply.

## DISCUSSION

Writ petitions are the appropriate means to challenge district court orders compelling arbitration. *Burch v. Dist. Ct.*, 118 Nev.

---

[1]In particular, the Gonskis pointed to a provision explaining that structural elements will not be considered defective and in need of repair unless deemed ''unsafe.''

[2]In so analyzing, the court's order noted that the arbitration provision contained the ''same size font, outlined in a table of contents, prefaced by the title 'WAIVER OF JURY TRIAL' which appeared in larger font and all capitals.''It appears that the waiver title was mistakenly ascribed to the arbitration provision, however. The waiver provision is located in the limited warranty and purportedly applies to ''any claim . . . not subject to binding arbitration.''

438, 441, 49 P.3d 647, 649 (2002). Orders compelling arbitration typically involve mixed questions of law and fact, which this court reviews under different standards, even in the context of a writ petition. *Marquis & Aurbach v. Dist. Ct.*, 122 Nev. 1147, 1156, 146 P.3d 1130, 1136 (2006); *D.R. Horton, Inc. v. Green*, 120 Nev. 549, 553, 96 P.3d 1159, 1162 (2004). The district court's factual findings are given deference, but questions purely of law are reviewed de novo. *D.R. Horton*, 120 Nev. at 553, 96 P.3d at 1162.

The parties do not dispute that the arbitration clauses at issue are governed by the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16 (2006). While courts may not invalidate FAA-governed arbitration clauses based on " 'state laws applicable *only* to arbitration provisions,' " such clauses are subject to "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Thus, in determining whether a defense to enforcement exists, we rely on state law. *See, e.g., Burch*, 118 Nev. at 442-43, 49 P.3d at 650; *Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1264-65, 1280 (9th Cir. 2006).

In Nevada also, strong public policy favors arbitration, and arbitration clauses are generally enforceable. *D.R. Horton*, 120 Nev. at 553, 96 P.3d at 1162. The policy of enforcing arbitration clauses arises, however, only after an enforceable agreement to arbitrate is found to exist. *See, e.g., Baker v. Osborne Development Corp.*, 71 Cal. Rptr. 3d 854, 861 (Ct. App. 2008). Although the party seeking to enforce an arbitration clause bears the burden of proving the clause's valid existence, any party opposing arbitration must establish a defense to enforcement. *D.R. Horton*, 120 Nev. at 553, 96 P.3d at 1162; *see also Woodside Homes of Cal. v. Superior Court*, 132 Cal. Rptr. 2d 35, 39 (Ct. App. 2003); *Motsinger v. Lithia Rose-FT, Inc.*, 156 P.3d 156, 159-60 (Or. Ct. App. 2007); *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119-20 (Pa. 2007); *Dallas Cardiology Associates v. Mallick*, 978 S.W.2d 209, 212 (Tex. App. 1998).

Here, the Gonskis assert that the general defense of unconscionability renders the arbitration provisions unenforceable.[3] Un-

---

[3]The concurring and dissenting justice would remand this matter to the district court to decide if the limited warranty's arbitration provision delegates to the arbitrator the determination of whether the arbitration provisions are unconscionable, citing the U.S. Supreme Court's decision in *Rent-A-Center,*

conscionable arbitration agreements will not be upheld; in reviewing an agreement's conscionability, we look for both procedural and substantive unconscionability. *D.R. Horton*, 120 Nev. at 553, 96 P.3d at 1162. An arbitration clause is procedurally unconscionable when a party has no "meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract." *Id.* at 554, 96 P.3d at 1162. Thus, for example, the use of fine print and/or misleading or complicated language that "fails to inform a reasonable person of the contractual language's consequences" indicates procedural unconscionability. *Id.* Substantive unconscionability, in contrast, is based on the one-sidedness of the arbitration terms. *Id.* at 554, 96 P.3d at 1162-63. Generally, in considering substantive unconscionability, courts look for terms that are " 'oppressive.' " *Burch*, 118 Nev. at 444, 49 P.3d at 651 (quoting *24 Hour Fitness, Inc. v. Superior Court*, 78 Cal. Rptr. 2d 533, 541 (Ct. App. 1998)). Although a showing of both types of unconscionability is necessary before an arbitration clause will be invalidated, in *D.R. Horton, Inc. v. Green*, we noted that a strong showing of procedural unconscionability meant that less substantive unconscionability was required. 120 Nev. at 553-54, 96 P.3d at 1162. The reverse is true also: the stronger the showing of substantive unconscionability, the less necessary is a strong showing of procedural unconscionability. *See, e.g., Armendariz v. Foundation*

*West, Inc. v. Jackson*, 561 U.S. 63 (2010). But as that opinion recognized, " 'courts should not assume that the parties agreed to arbitrate arbitrability unless there is "clear and unmistakable" evidence that they did so.' "*Id.* at 69 n.1 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995), and citing *AT&T Technologies v. Communications Workers*, 475 U.S. 643, 649 (1986)). "Where the assertion by the claimant is that the parties excluded from court determination not merely the decision of the merits of the grievance but also the question of its arbitrability, vesting power to make both decisions in the arbitrator, the claimant must bear the burden of a clear demonstration of that purpose." *Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 583 n.7 (1960).

In *Rent-A-Center*, the parties conceded that the arbitration provision called for such disputes to be decided by the arbitrator. *Rent-A-Center*, 561 U.S. at 69 n.1. But here, Pulte Homes has not made any such claim or demonstrated any such purpose, and thus, it may have waived any right to arbitrate arbitrability. In any case, the issue is not before this court, and if it were, we would conclude that the purported agreement to arbitrate whether "an issue" should be submitted to arbitration does not clearly and unmistakably commit to the arbitrator questions of the two arbitration provisions' enforceability. *Id.*; *see Greenspan v. LADT, LLC*, 111 Cal. Rptr. 3d 468, 486 (Ct. App. 2010) (recognizing that interpreting an arbitration provision is a legal matter subject to de novo review by an appellate court, unless the credibility of extrinsic evidence is at issue).

*Health Pyschcare*, 6 P.3d 669, 690 (Cal. 2000) ('' 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation . . . in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' '' (quoting 15 *Williston on Contracts* § 1763A, at 226-27 (3d ed. 1972))). Using that sliding scale here, we conclude that both procedural and substantive unconscionability are present, such that the Gonskis cannot be compelled to arbitrate their claims.

### *Procedural unconscionability*

The Gonskis assert that the circumstances at signing—numerous documents and limited time for review, competition from other buyers, and unclear and understated terms—precluded them from even attempting to bargain over, and from truly agreeing to, the arbitration terms. Although Pulte Homes asserts that its sales process ensures careful review of the sales documents with purchasers, it does not dispute that the Gonskis were given a large number of documents to review within a relatively short time frame and that they were informed that other buyers were waiting in case they failed to timely execute the documents. Instead, Pulte Homes argues that its arbitration clauses are conspicuous and clear.

In *D.R. Horton*, this court provided that, ''to be enforceable, an arbitration clause must at least be conspicuous and clearly put a purchaser on notice that he or she is waiving important rights under Nevada law.'' 120 Nev. at 557, 96 P.3d at 1164. In that case, we agreed that the arbitration clause was inconspicuous because nothing drew the reader's attention to its importance—it was printed in very small font on the back side of the agreement and contained the same bolded and capitalized headings as the agreement's other paragraphs, even though certain other provisions were entirely capitalized. *Id.* at 551-52, 556, 96 P.3d at 1161, 1164. The clause's inconspicuousness, together with the district court's finding that the seller had misrepresented its nature and failed to put the homebuyers on notice that they were foregoing certain rights under Nevada law, such as the right to a jury trial and NRS Chapter 40 attorney fees or other proximate damages, led us to uphold the district court's finding of procedural unconscionability. *Id.* at 556-57, 96 P.3d at 1164-65.

Like the arbitration provision at issue in *D.R. Horton*, the purchase agreement's arbitration provision here in no way draws the reader's attention: it is printed in normal-sized font and located on page 15 of an 18-page document and in the midst of identically formatted paragraphs, even though other paragraphs and sen-

tences, including ones describing "buyer structural/non structural changes," punch list items, inspection and cancellation, limitations on liability, and a termites and environmental notice/disclaimer, are called out through the use of all capital letters and bolding, and/or required the buyers to specially initial. Thus, even though the Gonskis initialed the pages on which the arbitration clause was located along with the other pages of the purchase agreement, nothing drew their attention to the importance of what those pages contained.

Moreover, with regard to the arbitration clause that specifically governs construction defect claims, the Gonskis received the limited warranty with a stack of other papers and were not required to initial or sign that they had read it. Like the purchase agreement's arbitration clause, the limited warranty's arbitration provision is not particularly called out on the pages. And although the limited warranty provision was mentioned in the purchase agreement's arbitration clause, neither that clause, nor any other in the purchase agreement, highlighted and clearly explained the limited warranty's arbitration provision and its binding effect. For instance, although the purchase agreement's arbitration provision points out that NRS Chapter 40 includes a mediation process, it does not indicate that the limited warranty's arbitration provision sets different mediation terms, calling for a plan administrator to mediate the dispute. *Compare* NRS 40.680 (governing mediation under NRS Chapter 40, including how a mediator is chosen). As a result, the Gonskis were not adequately put on notice that they were agreeing to forego important rights under Nevada law with respect to claims under the limited warranty. These facts, coupled with the circumstances at signing, amount to procedural unconscionability. While the procedural unconscionability is not overwhelming, its presence means that we must next consider substantive unconscionability.

*Substantive unconscionability*

At least two aspects of the arbitration clauses at issue are substantively unconscionable as to construction defect claims: their arbitration expense terms and the clauses' misrepresentation and implied waiver of NRS Chapter 40 rights.

### Arbitration expenses

The purchase agreement is misleading as to arbitration expenses under the limited warranty. In the purchase agreement's clause labeled "**ATTORNEYS' FEES**," which immediately follows the arbitration clause, the agreement provides that Pulte Homes will ad-

vance the fees necessary for ''the'' arbitration, even though each party is responsible for its own attorney fees and costs.[4] By referring simply to ''the'' arbitration, the purchase agreement's fees provision appears to apply to any arbitration, including arbitration under the limited warranty.[5] The limited warranty, however, provides that the party initiating arbitration must pay the necessary fees.[6] The fee provision, especially in light of the discrepancy between it and the purchase agreement, is one-sided.

Moreover, as the district court noted, the documents fail to mention the potentially high amount of the arbitration costs. While that failure alone does not amount to substantive unconscionability, *D.R. Horton*, 120 Nev. at 559, 96 P.3d at 1166 (stating that ''the absence of language disclosing the potential arbitration costs and fees, standing alone, may not render an arbitration provision unenforceable''), in this instance, the plan administrator is to determine the arbitration organization, and thus, the Gonskis were apparently unable to estimate potential costs at the time of signing, since they had to ask the plan administrator for a copy of the applicable arbitration rules. In *D.R. Horton*, this court noted its agreement with a Ninth Circuit ruling that invalidated a provision, in part because it required the arbitrating parties to split the fees. 120 Nev. at 557-58, 96 P.3d at 1165 (citing *Ting v. AT&T*, 319 F.3d 1126, 1148-49 (9th Cir. 2003)). Here, the Gonskis were not required merely to split the fees, but to pay the fees up front. Thus, the limited warranty's arbitration provision is substantively unconscionable because it required the Gonskis to pay the initial arbitration costs.

---

[4]The relevant provision reads

**ATTORNEYS' FEES:** We will advance the fees necessary to initiate and conduct the arbitration. If We are the prevailing party in the arbitration, the arbitrator may, to the extent permitted by law and the rules, direct you to reimburse Us for up to one half of the fees We have advanced. Each party shall bear their own attorney fees and costs.

[5]Although the purchase agreement states that claims under the limited warranty are to be arbitrated in accordance with the provision in that document, it does so following a paragraph describing which arbitration rules apply and the mediation prerequisite. Thus, it would be reasonable to expect the limited warranty's arbitration provision to denote the applicable rules and any mediation requirement, not a fees and costs division.

[6]The limited warranty provision provides

Each party shall bear its own expenses for the arbitration, including the remittance of an arbitration filing fee which will be paid by the party requesting arbitration. If THE HOMEOWNER requests arbitration and the arbitrator(s) finds in THE HOMEOWNER's favor, the amount THE HOMEOWNER advances for an arbitration filing fee will be reimbursed by THE BUILDER.

*NRS Chapter 40 rights*

NRS Chapter 40's construction defect provisions, NRS 40.600-.770, were created to ensure a speedy and fair process for resolving construction defect disputes between homeowners and contractors. To further that objective, the Legislature enacted provisions governing prelitigation notice, inspection, right to repair, mediation, settlement offers, and disclosures, among other things, incorporating advantages and penalties designed to encourage homeowners and contractors to resolve their disputes before resorting to the courts. *See, e.g.*, Senate Daily Journal, 68th Leg., at 14-16 (Nev., June 17, 1995) (remarks by Senator James).

As we have previously pointed out, NRS Chapter 40 is designed "to protect the rights of homebuyers by providing a process to hold contractors liable for defective original construction or alterations." *Westpark Owners' Ass'n v. Dist. Ct.*, 123 Nev. 349, 359, 167 P.3d 421, 428 (2007) (citing Hearing on S.B. 395 Before Assembly Comm. on the Judiciary, 68th Leg. (Nev., June 23, 1995) (statement of Valerie Cooney), and interpreting the chapter so as not to defeat or undermine this purpose). To that end, in contrast to the common law, NRS Chapter 40 allows homeowners to bring negligence claims against contractors for construction defects. *Olson v. Richard*, 120 Nev. 240, 243-44, 89 P.3d 31, 33 (2004). Further, the chapter provides successful claimant homeowners with certain rights and benefits, including attorney fees, costs, and several other types of consequential damages. NRS 40.655 (limiting the homebuyers' recovery of anything not listed in the statute).

NRS Chapter 40's provisions apply to "any" construction defect claims, NRS 40.635(1) (exempting personal injury and wrongful death claims from NRS Chapter 40's purview); *Olson*, 120 Nev. at 243, 89 P.3d at 33, and the chapter's provisions "[p]revail over any conflicting law otherwise applicable." NRS 40.635(2). Thus, we have recognized that, in enacting NRS Chapter 40, the Legislature did "not limit a homeowner's recovery to defects covered by contract or warranty." *Skender v. Brunsonbuilt Constr. & Dev. Co.*, 122 Nev. 1430, 1435, 148 P.3d 710, 714 (2006); *Olson*, 120 Nev. at 243, 89 P.3d at 33. Nor, we now conclude, may contractors limit a homeowner's recovery to defects covered by contract or warranty. To allow such exculpatory terms would defeat the protective purposes behind the statutes and thwart the public policy of this state, as expressed by the Legislature in NRS Chapter 40.

In this case, the purchase agreement arbitration provision states that, with respect to construction defect claims, NRS Chapter 40's construction dispute provisions apply, "if and to the extent" that

the limited warranty covers the alleged defect. In limiting NRS Chapter 40's application to only those defects covered by the limited warranty, the provision is substantively unconscionable, as it attempts to avoid NRS Chapter 40 liability and violates public policy.

In *Armendariz v. Foundation Health Pyschcare*, 6 P.3d 669, 679-80 (Cal. 2000), the California Supreme Court analyzed an arbitration agreement's applicability to unwaivable statutory rights in light of U.S. Supreme Court language on the subject:

> Assuming an adequate arbitral forum, we agree with the Supreme Court that ''[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'' [quoting *Mitsubishi Motors v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985)] . . . . That is, [the U.S. Supreme Court's language] sets a standard by which arbitration agreements and practices are to be measured, and disallows forms of arbitration that in fact compel claimants to forfeit certain substantive statutory rights.

Like the California court, we agree that arbitration agreements cannot be used to avoid rights and liabilities imposed by statute when doing so would violate the public policy of this state. *Kindred v. Dist. Ct.*, 116 Nev. 405, 414, 996 P.2d 903, 909 (2000) (citing *Mitsubishi Motors*, 473 U.S. at 628). Indeed, contract terms that violate public policy are often one-sided in favor of the more powerful party, rendering them substantively unconscionable. *See, e.g.*, *State Farm Mut. Auto. Ins. v. Hinkel*, 87 Nev. 478, 481-82, 488 P.2d 1151, 1153 (1971) (discussing a contractual exclusionary clause in light of Nevada public protections under insurance statutes and noting that ''[i]t was not the intent of the legislature to require the appellant to offer protection with one hand and then take a part of it away with the other''); 8 Richard A. Lord, *Williston on Contracts* § 18:10 (4th ed. 2010) (pointing out that substantively unconscionable terms are those that ''are unreasonably favorable to the more powerful party, such as terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy'').

Further, even with respect to covered claims, the arbitration provisions impermissibly fail to preserve the Gonskis' statutory rights. Although the purchase agreement's arbitration provision states that NRS Chapter 40 applies to covered defects, the purchase agreement and limited warranty arbitration provisions then limit Pulte Homes' liability in a manner inconsistent with Chapter 40's

damages provision, rendering the arbitration clause misleading, oppressive, and unenforceable as against public policy. For example, the purchase agreement provision states that the parties shall bear their own attorney fees, and the limited warranty provision provides that the requesting party must initially pay for the arbitration costs and its own expenses.[7] But under NRS 40.665, a prevailing homeowner is entitled to recover reasonable attorney fees and additional costs.[8] *D.R. Horton*, 120 Nev. at 556, 96 P.3d at 1164. Accordingly, the arbitration provisions compel the Gonskis to forfeit their statutory right to attorney fees and, potentially, costs, all the while indicating that NRS Chapter 40 applies. As a result, the arbitration provisions impliedly waive the Gonskis' statutory rights under NRS Chapter 40, such that substantive unconscionability exists.[9] *See Graham Oil v. Arco Products Co.*, 43 F.3d 1244 (9th Cir. 1994) (invalidating an arbitration agreement that waived statutory damages).

Based on the above, significant substantive unconscionability exists. Such substantive unconscionability tips the balance so that the arbitration clauses governing the Gonskis' construction defect claims must be declared unconscionable. Accordingly, the district court manifestly abused its discretion in compelling arbitration.

## CONCLUSION

While the procedural unconscionability stemming from the circumstances at signing and the failure to highlight the arbitration provisions is slight, the provisions' failure to adequately address the arbitration costs and disregard of NRS Chapter 40 rights strongly indicate substantive unconscionability. Therefore, we con-

---

[7]The limited warranty provision provides that, in the event the homeowner prevails at arbitration, the filing fee will be reimbursed. No similar provision awards the prevailing homeowner with attorney fees, however.

[8]Further, the purchase agreement and limited warranty limit Pulte Homes' liability to repair and replacement and provide that Pulte Homes shall not be liable for "special, indirect or consequential damages, including without limitation, damages based on a claimed decrease in the value of the [h]ome." In contrast, NRS 40.655 allows a prevailing homeowner to recover repair costs, reduction in market value, loss of use damages, the value of other damaged property, and any available statutory interest.

[9]Even if NRS Chapter 40 waivers were lawful, notice is required under *D.R. Horton*. 120 Nev. at 556-57, 96 P.3d at 1164. By stating that covered defect claims were subject to NRS Chapter 40, the purchase agreement failed to put the Gonskis on notice that the limited warranty's arbitration provision waived their right to NRS Chapter 40 attorney fees, costs, and other proximate damages, as required. Thus, the purchase agreement failed to put the Gonskis on notice that they were agreeing to forgo important rights under Nevada law, the NRS Chapter 40 waivers were not clear, and the Gonskis were given no opportunity to agree to them, resulting in the imposition of unbargained for, oppressive terms.

clude that the arbitration clauses are invalid as to the Gonskis' construction defect claims, and we grant the petition and direct the clerk of this court to issue a writ of mandamus instructing the district court to vacate its order compelling arbitration so that the Gonskis may pursue their district court action.

HARDESTY, J., concurs.

PICKERING, J., concurring in part and dissenting in part:

I agree that *D.R. Horton, Inc. v. Green*, 120 Nev. 549, 553, 96 P.3d 1159, 1162 (2004), requires reversal of the order summarily compelling arbitration. However, I write separately to emphasize that the limited warranty's arbitration provision contains a delegation clause that appears to commit the decision of "whether an issue should be submitted to binding arbitration" to the arbitrator, in addition to specifying application of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16.

The Supreme Court decided *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), after the briefing in this case concluded. *Rent-A-Center* rejects a Nevada-law-based unconscionability challenge to the enforceability under the FAA of an arbitration agreement containing a delegation clause, holding that unless the party contesting arbitration "challenged the delegation provision specifically, we must treat it as valid . . . and must enforce it . . . , leaving any challenge to the validity of the [Arbitration] Agreement as a whole for the arbitrator." *Id.* at 72. Using arbitration to decide whether arbitration is appropriate seems counterintuitive, but the Supreme Court has held that such clauses are enforceable if the parties clearly agreed to it. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-85 (2002).

The majority denies that the delegation clause is before this court and concludes that, even if it is, the evidence does not clearly and unmistakably show that the parties agreed to arbitrate the enforceability of the arbitration provisions. But the issue is before this court because the Gonskis are challenging the arbitration agreement as a whole, which includes the delegation clause. Although as-yet factually undeveloped, the written agreement shows that the parties appear clearly to have agreed to arbitrate enforceability of the arbitration provisions. Thus, the limited warranty states:

> This Dispute Settlement provision sets forth the exclusive remedy of all disputes or controversies under this LIMITED WARRANTY.
>
> . . . .
>
> If the Plan Administrator is unable to successfully mediate the dispute, the Plan Administrator will inform THE HOMEOWNER

and THE BUILDER that the dispute is unresolved and that Binding Arbitration is provided as a remedy for resolving the dispute.* These disputes may include, but are not limited to:

. . . . 5. Whether an issue should be submitted to binding arbitration.

The Gonskis agreed to this provision by signing the purchase agreement incorporating the limited warranty.

The majority finds substantive unconscionability in that the arbitration agreement limits the application of NRS Chapter 40, citing to *Armendariz v. Foundation Health Psychcare*, 6 P.3d 669 (Cal. 2000), a California case, to support their contention. What the majority fails to acknowledge is that California has statutes that explicitly prohibit contracts that inhibit unwaivable statutory rights. *Armendariz*, 6 P.3d at 680 (citing Cal. Civ. Code §§ 1668, 3513). Nevada does not have such statutes and thus we lack the legislative backing to judicially invalidate as unconscionable an agreement that commits such disputes to arbitration. *Kindred v. District Court*, 116 Nev. 405, 996 P.2d 903 (2000), also cited by the majority, does not support the majority's conclusion because it only states that statutory rights remain when the parties agree to arbitrate a statutory issue. It says nothing about a court declaring an agreement as a whole unconscionable in the face of an otherwise valid arbitration clause. *Kindred*, 116 Nev. at 414, 996 P.2d at 909.

The Gonskis never explicitly challenged the delegation clause, only the agreement to arbitrate. Although *Rent-A-Center* did not permit Jackson to refocus his argument on the delegation clause specifically, that aspect of the decision appears tied to prudential concerns unique to certiorari practice before the Supreme Court, not the FAA itself. And, while the Gonskis did not focus on the delegation clause, neither did Pulte. On this record, I would not reverse outright. Instead, I would reverse and remand for further briefing and argument on whether the agreements contain an enforceable delegation clause under *Rent-A-Center*. Judicial findings on other matters should abide resolution of the threshold *Rent-A-Center* issue as to forum.