133 Nev., Advance Opinion 66

# IN THE SUPREME COURT OF THE STATE OF NEVADA

HIGH NOON AT ARLINGTON RANCH
HOMEOWNERS ASSOCIATION, A
NEVADA NONPROFIT
CORPORATION,
Petitioner,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
SUSAN JOHNSON, DISTRICT JUDGE,
Respondents,
   and
D.R. HORTON, INC.,
Real Party in Interest.

No. 65456



FILED

SEP 27 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Original petition for writ of mandamus or prohibition challenging a district court order granting partial summary judgment.

*Petition granted.*

Angius & Terry LLP and Scott P. Kelsey, Paul P. Terry, Jr., and John J. Stander, Las Vegas,
for Petitioner.

Wolfenzon Rolle and Bruno Wolfenzon and Jonathan P. Rolle, Las Vegas; Wood, Smith, Henning & Berman, LLP, and Joel D. Odou and Victoria L. Hightower, Las Vegas,
for Real Party in Interest.

BEFORE THE COURT EN BANC.[1]

## *OPINION*

By the Court, HARDESTY, J.:

In this petition for extraordinary relief, we consider whether a homeowners' association has standing to bring a construction defect suit on behalf of its members if the ownership of some units has changed since the action began. The statute in effect at the commencement of litigation, NRS 116.3102(1)(d) (2007), afforded a homeowners' association representational standing to pursue litigation on behalf of the units' owners. The narrow questions we consider are whether a homeowners' association has such standing to represent (a) unit owners who purchase their units after the litigation commences, and (b) unit owners who sell their units after the litigation commences.

We conclude that homeowners' associations do have representational standing to represent unit owners who purchase their units after the litigation commences as both NRS Chapters 40 and 116 and this court's previous construction defect holdings support the assertion that homeowners' associations represent all unit owners within a community. We further conclude, however, that under NRS 116.3102(1)(d) (2007), homeowners' associations may only represent their members, and thus, a homeowners' association does not have standing under that statute to bring, or continue to pursue, claims for unit owners

---

[1]The Honorable Ron D. Parraguirre, Justice, voluntarily recused himself from participation in the decision of this matter. The Honorable Lidia S. Stiglich, Justice, did not participate in the decision of this matter.

SUPREME COURT
OF
NEVADA

(O) 1947A

who sell their units after the litigation commences. Accordingly, we grant the petition.

## FACTS AND PROCEDURAL HISTORY

Petitioner High Noon at Arlington Ranch Homeowners Association (High Noon) is a homeowners' association created pursuant to NRS Chapter 116 that operates and manages the High Noon at Arlington Ranch community. This community consists of 342 residential units contained in 114 buildings, with three units per building.

In June 2007, High Noon filed its complaint against real party in interest D.R. Horton, "in its own name on behalf of itself and all of the High Noon . . . unit owners" alleging breach of implied warranties of workmanlike quality and habitability, breach of contract, breach of express warranties, and breach of fiduciary duty. In addition, High Noon obtained written assignment of the claims of 194 individual unit owners. These assigned units involve 107 of the community's 114 buildings.

On January 24, 2014, D.R. Horton filed a motion for partial summary judgment[2] contending that, since only 112 of High Noon's 342 members were unit owners at the time the complaint was filed, High Noon's standing should be reduced to those 112 units. D.R. Horton also argued that a subclass of 192 units for interior claims' purposes should be reduced to 62 units for the same reason.

The district court agreed with D.R. Horton and granted partial summary judgment. In its order, the district court determined that High Noon could not represent "claims on behalf of the now 230 former-owners

---

[2]Only the relevant procedural history is described in this opinion, as the case has been ongoing for almost eight years and the parties have filed numerous motions and writ petitions.

as [they] are no longer the real parties in interest as required under NRCP 17." Instead, the court found that former owners "retain their claims for damages they personally suffered," but because the units remain "constructively defective, the former owners are no longer the 'real parties in interest' with respect to such claims." The district court also determined, however, that High Noon could represent "the claims of former owners for other damages suffered and specified under NRS 40.655, such as loss of use and market value, repair and temporary housing expenses, attorneys' fees and the like . . . ." Finally, the district court concluded that High Noon could also represent subsequent owners "in the event of an assignment of claims for existing or continuing construction defects by the seller or soon-to-be former owner to the purchaser in conjunction with the property's transfer." This petition followed.

## DISCUSSION

High Noon argues the district court erred when it found that the association could only maintain an action for those owners who have owned their units continuously since High Noon first filed its complaint.[3]

---

[3]High Noon also argues that the district court violated NRCP 56 when it granted summary judgment on allegedly independent grounds that were not raised in the motion for summary judgment. High Noon argues that, in providing the parties copies of the order in another district court case, *Balle v. Carina Corp.*, No. A557753 (Order, Dec. 9, 2009), and granting a short recess for the parties to review it, the district court did not provide High Noon an "opportunity to meaningfully respond to this new source of authority." We disagree.

Although the district court's order here resembles the *Balle* order, the conclusions of law align with portions of D.R. Horton's argument. While the district court relied on its previous ruling in cases involving
*continued on next page...*

D.R. Horton responds that the unit owners at the time High Noon filed the complaint are the real parties in interest, and without a valid assignment, High Noon cannot represent those owners who subsequently purchased units. D.R. Horton further argues that the district court erred when it found that High Noon has standing to pursue the claims of former unit owners. Finally, D.R. Horton argues for the first time in its answer to the petition that subsequent unit owners are barred from bringing specific claims in the complaint, such as breach of express warranties and breach of fiduciary duty.

*Writ relief is appropriate*

High Noon petitions this court for a writ of mandamus[4] compelling the district court to amend its order granting partial summary judgment in favor of D.R. Horton. "A writ of mandamus is available to compel the performance of an act that the law requires . . . or to control an arbitrary or capricious exercise of discretion." *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008);

---

*...continued*
single family homes, it nevertheless agreed with D.R. Horton's argument that subsequent owners need an assignment of the claims. Further, while the *Balle* case was new authority presented to counsel during the hearing, the legal conclusion—that subsequent owners do not have standing absent assignments—is the same as the district court's holding in *Smith v. Central Park, LLC*, No. A-09-605954-D (Findings of Fact, Conclusions of Law and Order, Dec. 5, 2011). D.R. Horton attached the *Smith* order to its reply brief. Therefore, we conclude that the district court did not base its decision on grounds not argued in the briefs or at argument.

[4]While High Noon titled its petition as a "Petition for Writ of Prohibition or Mandamus," High Noon only argues for a writ of mandamus. Accordingly, we do not address the request for a writ of prohibition.

*see* NRS 34.160. Generally, this court "decline[s] to consider writ petitions that challenge interlocutory district court orders," here, an order granting partial summary judgment, because an appeal from a final judgment is an adequate legal remedy. *Int'l Game Tech.*, 124 Nev. at 197, 179 P.3d at 558; *see also Smith v. Eighth Judicial Dist. Court*, 113 Nev. 1343, 1344, 950 P.2d 280, 281 (1997). However, even when an adequate and speedy remedy exists, this court may exercise its discretion when an important issue of law needs clarification and sound judicial economy warrants intervention. *Cote H. v. Eighth Judicial Dist. Court*, 124 Nev. 36, 39, 175 P.3d 906, 908 (2008).

This petition merits this court's consideration as it raises an important issue regarding Nevada's construction defect law and NRS 116.3102(1)(d) (2007).[5] Specifically, the petition presents an important question regarding a homeowners' association's ability to represent its members in construction defect litigation under the older version of the statute, and there are a number of similar cases currently pending. Not

---

[5]NRS 116.3102(1)(d) was amended by the 2015 Legislature's enactment of A.B. 125 and the Governor's subsequent approval on February 24, 2015. The amended statute explicitly provides that a homeowners' association does not have standing to represent individual units in construction defect actions:

> The association may not institute, defend or intervene in litigation or in arbitration, mediation or administrative proceedings in its own name on behalf of itself or units' owners with respect to an action for a constructional defect pursuant to NRS 40.600 to 40.695, inclusive, unless the action pertains exclusively to common elements.

NRS 116.3102 (2015). All further references to the NRS are based on the statutes in effect at the commencement of this litigation in 2007.

only will the court's resolution of the legal questions raised in this petition affect the underlying case, but it will also likely affect other pending construction defect cases. Therefore, we exercise our discretion to entertain the petition.

At issue is whether homeowners' associations have standing to represent unit owners who purchased their units after an association files its initial complaint, and whether homeowners' associations may continue to represent unit owners who sold their units while the litigation was pending. Before addressing these issues, however, we must examine High Noon's complaint and interpret the district court's order to frame our discussion of the standing issues.

*High Noon's claims for relief*

The district court's order never referred to High Noon's complaint and, ultimately, did not specify how the association's claims on behalf of the various past and present unit owners related to its standing. The district court instead indicated that High Noon could continue to represent those owners who had not sold their property during the litigation, could represent owners who had sold their property during the litigation in their claims for personal damages relating to construction defects, and could represent new unit owners only if the former unit owners assigned their "claims for constructional defects" to the subsequent owners. The problem with this oversight is that the standing analysis varies depending on the type of claim, as some claims do not transfer to a subsequent party.[6] Because the district court did not specify how High

___

[6]D.R. Horton did not argue that subsequent owners could not pursue specific claims, such as breach of fiduciary duty, until it filed its answer to the writ petition. Because this argument was not made before the district

*continued on next page...*

Noon's standing related to the unit owners' claims in the complaint, we briefly examine High Noon's complaint.

High Noon's complaint alleged four claims for relief: (1) breach of implied warranties of workmanlike quality and habitability, (2) breach of contract, (3) breach of express warranties, and (4) breach of fiduciary duty. The complaint never alleges that the claims for relief fall under NRS Chapter 40. Rather, the only specific mention of NRS Chapter 40 is in the first claim for relief, which references "monies recoverable for attorney's fees, costs and expenses under NRS 40.600 *et seq.*"

The breach of contract and breach of fiduciary duties claims are not construction defect claims under NRS Chapter 40. Similarly, a breach of the implied warranty of habitability is not mentioned in NRS Chapter 40 and was extended to include builders in *Radaker v. Scott*, 109 Nev. 653, 661, 855 P.2d 1037, 1042 (1993). These claims are distinct from construction defect claims, but the district court's order does not indicate how the order was intended to affect them. Therefore, we conclude that the order does not affect these claims, and we decline to address them.

However, in the breach of implied warranty of workmanlike quality and breach of express warranties claims, High Noon sought damages for alleged defects and code violations under NRS 116.4113 and NRS 116.4114. While High Noon did not specifically identify NRS

---

*...continued*

court and is not necessary for us to decide to resolve this writ petition, we decline to consider this argument. *See Smith v. Eighth Judicial Dist. Court*, 107 Nev. 674, 677, 818 P.2d 849, 851 (1991) ("[T]he issuance of a writ of mandamus or prohibition is purely discretionary with this court."); *Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981) ("A point not urged in the trial court . . . will not be considered on appeal.").

Chapter 40, the implied and express warranty claims sought relief similar to that allowed for a construction defect. Under NRS 40.615, "[c]onstructional defect" is defined as

> a defect in the design, construction, manufacture, repair or landscaping of a new residence, of an alteration of or addition to an existing residence, or of an appurtenance and includes, without limitation, the design, construction, manufacture, repair or landscaping of a new residence, of an alteration of or addition to an existing residence, or of an appurtenance:
>
> 1. Which is done in violation of law, including, without limitation, in violation of local codes or ordinances.

To allege defects in the construction of the units, the complaint also used language similar to the language defining construction defects in NRS 40.615. *See* NRS 40.615(3) (defining a construction defect as a defect "[w]hich is not completed in a good and workmanlike manner in accordance with the generally accepted standard of care in the industry").

Regardless of High Noon stating that the claims for relief arise under NRS Chapter 116, the district court's order analyzed High Noon's standing to assert the unit owner's claims as if the claims were construction defect claims under NRS Chapter 40. *See* NRS 40.635(2) (stating that the provisions of "NRS 40.600 to 40.695, inclusive . . . [p]revail over any conflicting law otherwise applicable to the claim or cause of action"); *see also Gonski v. Second Judicial Dist. Court*, 126 Nev. 551, 562, 245 P.3d 1164, 1172 (2010) ("NRS Chapter 40's provisions apply to 'any' construction defect claims."); *Olson v. Richard*, 120 Nev. 240, 243, 89 P.3d 31, 33 (2004) ("NRS 40.635(2) clarifies that Chapter 40 prevails over any conflicting law otherwise applicable to the claim or cause of action." (internal quotation marks omitted)).

Accordingly, as the parties and the district court treated High Noon's claims for relief for breach of implied warranty of workmanlike quality and breach of express warranty as construction defect claims under NRS Chapter 40, we do so as well for purposes of this opinion.

*Under the then-existing statute, homeowners' associations have standing to represent unit owners who purchase units after litigation begins*

Turning to the merits, High Noon argues that a homeowners' association has standing pursuant to NRS 116.3102(1)(d) and NRCP 17 to represent all unit owners, regardless of ownership status, because a homeowners' association is the claimant and real party in interest for construction defect claims. We agree in part.

Under the version of NRS 116.3102(1)(d) in effect at the time of the complaint, homeowners' associations may act in a representative capacity on behalf of homeowner members in construction defect actions. *Beazer Homes Holding Corp. v. Eighth Judicial Dist. Court*, 128 Nev. 723, 730-31, 291 P.3d 128, 133-34 (2012); *D.R. Horton, Inc. v. Eighth Judicial Dist. Court (First Light II)*, 125 Nev. 449, 457, 215 P.3d 697, 702-03 (2009). However, it is unclear if, in this representative capacity, a homeowners' association may represent homeowners who bought their units during the pendency of the litigation, and thus, this is a matter of first impression for this court.

We review questions of statutory construction de novo, *I. Cox Constr. Co., LLC v. CH2 Invs., LLC*, 129 Nev. 139, 142, 296 P.3d 1202, 1203 (2013), even in the context of a writ petition, *Int'l Game Tech.*, 124 Nev. at 198, 179 P.3d at 559. When a statute is facially clear, we will give effect to the statute's plain meaning. *D.R. Horton, Inc. v. Eighth Judicial Dist. Court (First Light I)*, 123 Nev. 468, 476, 168 P.3d 731, 737 (2007). Where a statute is ambiguous because it is susceptible to more than one

reasonable interpretation, this court will consider reason and public policy to determine legislative intent. *Cable v. State ex rel. Emp'rs Ins. Co. of Nev.*, 122 Nev. 120, 124-25, 127 P.3d 528, 531 (2006). When interpreting an ambiguous statute to give effect to the Legislature's intent, we will look to the legislative history of the statute in light of the overall statutory scheme. *See We the People Nev. v. Miller*, 124 Nev. 874, 881, 192 P.3d 1166, 1171 (2008). In addition, "[t]he legislature is presumed to have intended a logical result, rather than an absurd or unreasonable one." *Clark Cty. Sch. Dist. v. Clark Cty. Classroom Teachers Ass'n*, 115 Nev. 98, 103, 977 P.2d 1008, 1011 (1999) (quoting *Angoff v. M & M Mgmt. Corp.*, 897 S.W.2d 649, 654 (Mo. Ct. App. 1995)).

This court assumes that when enacting a statute, the Legislature is aware of related statutes. *Cable*, 122 Nev. at 125, 127 P.3d at 531. Moreover, "when a term is defined in NRS Chapter 116, the statutory definition controls and any definition that conflicts will not be enforced." *Boulder Oaks Cmty. Ass'n v. B & J Andrews Enters., LLC*, 125 Nev. 397, 406, 215 P.3d 27, 32 (2009). Finally, NRS 116.003 states that "the words and terms defined in NRS 116.005 to 116.095, inclusive, have the meanings ascribed to them in those sections."

Under Nevada law, an action must be commenced by the real party in interest—"one who possesses the right to enforce the claim and has a significant interest in the litigation." *Szilagyi v. Testa*, 99 Nev. 834, 838, 673 P.2d 495, 498 (1983); *see* NRCP 17(a). Generally, a party has standing to assert only its own rights and cannot raise the claims of a third party not before the court. *Deal v. 999 Lakeshore Ass'n*, 94 Nev. 301, 304, 579 P.2d 775, 777 (1978). However, under NRCP 17(a), "a party authorized by statute may sue in that person's own name without joining

the party for whose benefit the action is brought." Thus, a party needs statutory authorization before it can assert a third party's claims.

A homeowners' association's standing rights are statutorily granted. Under NRS 116.3102(1)(d), an association "[m]ay institute, defend or intervene in litigation or in arbitration, mediation or administrative proceedings in its own name on behalf of itself or two or more units' owners on matters affecting the common-interest community." We have held that "so long as a common-interest community association is acting on behalf of two or more units' owners, it can represent its members in actions concerning the community." *Beazer Homes*, 128 Nev. at 731, 291 P.3d at 134. Thus, when homeowners' associations act under these circumstances, they are real parties in interest.

NRS 116.3102(1)(d), however, does not expressly indicate what happens if a unit owner sells his unit and another person purchases the unit during the time the homeowners' association is litigating on behalf of its members. The statute merely stated that an association can represent two or more units' owners. The Nevada Revised Statutes did not define the plural noun "units' owners," but NRS 116.095 defined "[u]nit's owner" as "a declarant or other person who owns a unit." Because "owns" is a present tense verb, NRS 116.3102(1)(d) indicated that homeowners' associations are representatives for only the current owners of units. Furthermore, the statute did not restrict a homeowners' association from representing subsequent unit owners if ownership changed, and no Nevada statute limited the application of NRS 116.3102(1)(d) in 2007. Thus, we conclude that NRS 116.3102(1)(d) permitted homeowners' associations to represent current unit owners, even if a unit's owner changed during the litigation.

D.R. Horton argues to the contrary, however, that the real party in interest in a construction defect action is only the owner of a unit at the time the suit was filed, because the subsequent purchaser of the damaged property received a reduction in the purchase price as a result of the damaged property, and it is the seller who continues to be damaged. D.R. Horton contends that an association only has standing to bring suit on behalf of its members to the extent those members would have standing to sue on their own behalf, and subsequent purchasers would have such a right only if they received an assignment from the previous owner. Thus, D.R. Horton argues that because a homeowners' association brings an action pursuant to NRS 116.3102(1)(d) on behalf of its members and not its units, the plain language of NRS 116.3012(1)(d) limits the association's standing to the owners of the units at the time the suit was filed.

However, the reasoning and public policy underlying the Legislature's intent when enacting NRS 116.3012(1)(d) refute D.R. Horton's argument. *See Barney v. Mt. Rose Heating & Air Conditioning*, 124 Nev. 821, 826, 192 P.3d 730, 734 (2008). Interpreting the statute to mean a homeowners' association's representative standing decreases each time a unit's ownership changes during the pendency of litigation would lead to unreasonable results. *See Clark Cty. Sch. Dist.*, 115 Nev. at 103, 977 P.2d at 1011 (noting that the interpretation of a statute's language should not produce unreasonable or absurd results). Such a result would undermine a homeowners' association's ability to represent the entire community and would undermine the Legislature's intent for NRS 116.3102(1)(d)—to provide a mechanism for associations to represent all of its members.

SUPREME COURT
OF
NEVADA

(O) 1947A

13

Interpreting NRS 116.3102 to allow the association to represent all present unit owners, including subsequent owners, is also in "harmony" with NRS Chapter 40. *See Barney*, 124 Nev. at 827, 192 P.3d at 734. Several sections of NRS Chapter 40 recognize homeowners' associations' representative standing. For example, a "claimant" for NRS Chapter 40 purposes can be "[a] representative of a homeowner's association that is responsible for a residence or appurtenance and is acting within the scope of the representative's duties pursuant to chapter 116."[7] NRS 40.610(2). In addition, this claimant is granted other duties such as allowing inspections and providing a reasonable opportunity to repair defects. *See* NRS 40.647. Moreover, NRS 40.645(5) allows a homeowners' association to provide an NRS Chapter 40 notice. Thus, NRS Chapter 40 recognizes homeowners' association's rights and duties as a community representative of construction defect claims, and it has no limiting language or statutes that prevent a homeowners' association from representing subsequent owners.

Similarly, NRS 40.6452 is consistent with the concept of representation regardless of ownership identity. This statute concerns common construction defects within a single development and providing notice of construction defects common to the community on behalf of an "unnamed owner." NRS 40.6452. "Unnamed owner" appears several

---

[7]In 1997, the Legislature amended this statute to include homeowners' associations as claimants "acting within the scope of the representative's duties pursuant to chapter 116," however there is no record of any legislative discussion of this addition. NRS 40.610. The only comment in the minutes was that this addition was a technical change. *See* Hearing on S.B. 480 Before the Senate Judiciary Comm., 69th Leg., (Nev., July 3, 1997).

times throughout the statute.[8] *See* NRS 40.6452(2)-(6). For example, in NRS 40.6452(2), "[t]he contractor may provide a disclosure of the notice of the alleged constructional defects to each unnamed owner of a residence." Accordingly, because NRS 40.6452 does not require specific identity of unit owners within a community, the Legislature recognized ownership within a community could change.

If a homeowners' association could not represent all of its members, the association's ability to be a claimant pursuant to NRS 40.610 would be undermined. Therefore, reading NRS Chapters 40 and 116 together permits homeowners' associations to represent all members so that common defects throughout a community may be addressed in the most efficient method possible.[9] Accordingly, we reject D.R. Horton's argument and conclude that the Legislature's intent in adopting NRS Chapter 40 and NRS Chapter 116 was to afford homeowners' associations the ability to represent members in an efficient way to expedite remedies

---

[8]NRS Chapter 40 does not provide a definition of "unnamed owner."

[9]D.R. Horton argues that for a homeowners' association to "represent ever changing homeowners . . . would . . . frustrate the legislative intent of Chapter 40." D.R. Horton further argues that subsequent purchasers would not have "complied with the mandates of Chapter 40" because if a subsequent purchaser were to pursue an NRS Chapter 40 claim, the purchaser would have to serve D.R. Horton with a new NRS 40.645 notice for that particular unit. We disagree.

Under NRS Chapter 40, a homeowners' association is a claimant and can issue notices. The redundancy of a new NRS Chapter 40 notice from a subsequent owner is not necessary—the homeowners' association has already provided notice to the developer of the construction defect issue within the unit.

for homeowners, which includes subsequent unit owners if ownership changes during litigation.

This conclusion is also in harmony with our recent holdings in construction defect cases. In *ANSE, Inc. v. Eighth Judicial District Court*, we held that subsequent owners of homes could seek remedies under construction defect statutes. 124 Nev. 862, 864-65 192 P.3d 738, 740 (2008). In *First Light II*, we concluded that homeowners' associations have standing to represent claims affecting individual units, but claims may be subject to NRCP 23 class-action principles if challenged. 125 Nev. at 457-58, 215 P.3d at 702-03. However, failing to meet NRCP 23 demands does not strip a homeowners' association of its ability to represent its members. *Beazer Homes*, 128 Nev. at 731, 291 P.3d at 134.

Caselaw from other jurisdictions also supports our conclusion. When the Legislature codified NRS Chapter 116, it modeled the chapter on the Uniform Common Interest Ownership Act (UCIOA). *See, e.g.*, Hearing on A.B. 221 Before the Assembly Judiciary Comm., 66th Leg. (Nev., March 20, 1991); Hearing on A.B. 221 Before the Senate Judiciary Comm., 66th Leg. (Nev., May 23, 1991). NRS 116.3102 mirrors section 3-102 of the UCIOA. *See* Unif. Common Interest Ownership Act § 3-102(a)(4), 7 U.L.A. 96-97 (2009). While several states have adopted a version of the UCIOA and have a similar standing statute,[10] no state court has addressed this specific issue. However, in *Candlewood Landing*

_____

[10]*See* Alaska Stat. Ann. § 34.08.320(a)(4) (West 2014); Colo. Rev. Stat. Ann. § 38-33.3-302(1)(d) (West 2013); Conn. Gen. Stat. Ann. § 47-244(a)(4) (West 2010); Del. Code. Ann. tit. 25, § 81-302(a)(4) (West 2009); Minn. Stat. Ann. § 515B.3-102(a)(4) (West 2011); Vt. Stat. Ann. tit. 27A, § 3-102(a)(4) (West 2014); W. Va. Code Ann. § 36B-3-102(a)(4) (West 2011).

*Condominium Ass'n, Inc. v. Town of New Milford*, the Appellate Court of Connecticut concluded that, under Connecticut's Common Interest Ownership Act, modeled after the UCIOA, a condominium association had standing to act on behalf of its unit owners, including the right to bring tax appeals regarding common areas fractionally owned by the unit owners. 686 A.2d 1007, 1009-10 (Conn. App. Ct. 1997). Like NRS 116.3102, the Connecticut Common Interest Ownership Act permits an association to "'[i]nstitute, defend or intervene in litigation or administrative proceedings in its own name on behalf of itself or two or more unit owners on matters affecting the common interest community.'" *Id.* at 1009 (alteration in original) (quoting Conn. Gen. Stat. § 47-244(a)(4) (2010)). After determining the language of the statute was plain and unambiguous, the court noted that the statute contained "no exceptions or limitations on a condominium association's authority to act on behalf of the unit owners as long as at least two unit owners agree." *Id.* The court indicated that if it applied this exception, it would have "burdened the court system and the municipalities with hundreds of cases where a single action by the association could have accomplished the same result more speedily and efficiently." *Id.* at 1010.

Accordingly, under NRS 116.3102(1)(d), homeowners' associations have standing to pursue construction defect claims regardless of ownership changes[11] during the pendency of litigation.

---

[11]D.R. Horton also argues that subsequent purchasers cannot recover for construction defects under NRS 40.640(5) if the owner disclosed the defect. We disagree. While the statute presumably begins to limit contractor liability, sections 1-4 describe situations of neglect or "normal" occurrences; the only mention of a construction defect is in

*continued on next page...*

 

*Homeowners' associations do not have standing to continue to represent unit owners who sell units after litigation begins*

D.R. Horton further argues that the district court erred when it found High Noon has standing to pursue claims of former unit owners, and requests that this court issue a writ of mandamus directing the district court to vacate this portion of its order. D.R. Horton, however, requests this relief in its answer, not in an original writ petition, and D.R. Horton did not meet other procedural requirements for seeking a writ. While we would generally decline to consider this issue, if an "error is apparent on the record, . . . we may 'take cognizance of plain error *sua sponte*'" to consider and correct that error. *Mainor v. Nault*, 120 Nev. 750, 774, 101 P.3d 308, 324 (2004), *as corrected on denial of reh'g* (Apr. 13, 2005) (quoting *Crow-Spieker #23 v. Robert L. Helms Constr. & Dev. Co.*, 103 Nev. 1, 3 n.2, 731 P.2d 348, 350 n.2 (1987)).

We concluded above that a homeowners' association's representational standing allows it to represent only current unit owners. The corollary is that representational standing does not permit a homeowners' association to represent former unit owners because those owners are no longer members of the association. This statutory conclusion is echoed in High Noon's own "Covenants, Conditions & Restrictions." Therein, High Noon's "Duties, Powers and Rights" reflect that the association may act in any manner "necessary or proper, in operating for the peace, health, comfort, safety and general welfare of its [m]embers, including any applicable powers set forth in NRS § 116.3102."

---

*...continued*
section 5. Importantly, however, this statute concerns contractors and does not mention disclosures by *homeowners* to future buyers.

This includes High Noon litigating on behalf of its unit owners. Therefore, the benefit of the association's representative litigation under NRS 116.3102(1)(d) is contingent upon membership in the association. However, membership within High Noon is automatically terminated upon sale of the unit and transferred to the new unit owner; this membership is not assignable. Thus, because the membership is transferred to the new unit owner upon sale, High Noon cannot represent prior unit owners via its representational standing.[12]

## CONCLUSION

This court chooses to exercise its discretion and entertain High Noon's writ petition. Under the prior version of NRS 116.3102(1)(d), we conclude that homeowners' associations have standing in construction defect actions to represent unit owners who purchased property at High Noon after the initiation of the underlying litigation. We also conclude, however, that when a unit owner sells his or her home in the association, then he or she is no longer a member of the association and the association can no longer represent him or her through the association's representational standing under the former NRS 116.3102(1)(d). Therefore, we grant this petition and direct the clerk of this court to issue a writ of mandamus directing the district court to vacate its partial

---

[12]The district court's order references assignments of rights from then current, now former, unit owners to High Noon purporting to permit High Noon to pursue their interests in the underlying litigation. The parties' arguments in this proceeding, however, focused on High Noon's representational standing. Accordingly, we have addressed the arguments concerning High Noon's representational standing, but we decline to consider whether High Noon may pursue the interests of former unit owners who have assigned their rights to High Noon.

 

summary judgment order and reconsider the partial summary judgment in light of this order.

_____, J.
Hardesty

We concur:

_____, C.J.
Cherry

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering